RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0044p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

**20-5850**

TARA BLESSING and CHRIS BLESSING, a/n/f, parents, and natural guardians of their minor son, Charles B. Blessing; MICHAEL GRAY and LORI GRAY, a/n/f, parents, and natural guardians of their minor son, Liam Gray; KEVIN PALEY and NADINE PALEY, a/n/f, parents, and natural guardians of their minor son, Samuel Paley; SAUNDRA SMITH and MICHAEL SMITH, a/n/f, parents, and natural guardians of their minor son, Charlie Smith; ANTHONY GARDNER and SHANNON GARDNER, a/n/f, parents, and natural guardians of their minor son, Evan Anthony Gardner; WYATT SCHWARTZ; WILLIAM FRIES; ERIC CURK; AUSTIN FOUST; ANDREW GIBSON; BRADLEY KATHMAN; PATRICK KENNEDY,

                                         *Plaintiffs-Appellants*,

     *v.*

SUJANA S. CHANDRASEKHAR, M.D., FACS,

                                         *Defendant-Appellee*.

Nos. 20-5850/5852

**20-5852**

JOHN DOE; TARA BLESSING and CHRIS BLESSING, a/n/f, parents, and natural guardians of their minor son, Charles B. Blessing; JENNIFER FOUST and JOHN FOUST, a/n/f, parents, and natural guardians of their minor son, Austin Foust; GINA FRIES and DANIEL FRIES, a/n/f, parents, and natural guardians of their minor son, William Fries; SHANNON CRAIG and ANTHONY GARDNER, a/n/f, parents, and natural guardians of their minor son, Evan Anthony Gardner; LORI GRAY and MICHAEL GRAY, a/n/f, parents, and natural guardians of their minor son, Liam Gray; SAUNDRA SMITH and MICHAEL SMITH, a/n/f, parents, and natural guardians of their minor son, Charlie Smith; ERIC CURK; ANDREW GIBSON; PATRICK KENNEDY; WYATT SCHWARTZ; BRADLEY KATHMAN; NADINE PALEY and KEVIN PALEY, a/n/f, parents, and natural guardians of their minor son, Sam Paley,

                                         *Plaintiffs-Appellants*,

     *v.*

KATHY GRIFFIN,

                                         *Defendant-Appellee*.

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
Nos. 2:20-cv-00016 (20-5850); 2:19-cv-00126 (20-5852)—William O. Bertelsman, District Judge.

Argued:  January 12, 2021

Decided and Filed:  February 23, 2021

Before:  SILER, GIBBONS, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ARGUED:**  Kent W. Seifried, POSTON, SEIFRIED & SCHLOEMER, Fort Mitchell, Kentucky, for Appellants.  Jason W. Palmer, FARUKI PLL, Cincinnati, Ohio, for Appellee in 20-5850.  Michael J. Grygiel, GREENBERG TRAURIG, LLP, Albany, New York, for Appellee in 20-5852.  **ON BRIEF:**  Kent W. Seifried, POSTON, SEIFRIED & SCHLOEMER, Fort Mitchell, Kentucky, for Appellants.  Jason W. Palmer, Stephen A. Weigand, FARUKI PLL, Cincinnati, Ohio, for Appellee in 20-5850.  Michael J. Grygiel, GREENBERG TRAURIG, LLP, Albany, New York, J. Stephen Smith, GRAYDON HEAD & RITCHEY, LLP, Fort Mitchell, Kentucky, John C. Greiner, GRAYDON HEAD & RITCHEY, LLP, Cincinnati, Ohio, Adam Siegler, GREENBERG TRAURIG, LLP, Los Angeles, California, for Appellee in 20-5852.

_____

**OPINION**

_____

JULIA SMITH GIBBONS, Circuit Judge.  A group of high school students from Kentucky received widespread attention for their conduct at the Lincoln Memorial during the 2019 March for Life rally.  In the wake of negative coverage and critical posts on social media, the students sued a number of media defendants and people who had engaged in online commentary about the incident.  Here, the district court dismissed two cases against Twitter users Sujana Chandrasekhar and Kathy Griffin for lack of personal jurisdiction.  We agree that the district court lacks personal jurisdiction over the two defendants and affirm.

I.

On January 18, 2019, students at Covington Catholic High School participated in the annual March for Life rally in Washington, D.C.  An incident occurred after the march between a

group of Covington Catholic students, including the plaintiffs, and others gathered at the Lincoln Memorial, including "a self-described Native American Elder." 20-5850, DE1, Compl., Page ID 4; 20-5852, DE1, Compl., Page ID 3. The complaints allege that images of the confrontation "were disseminated world-wide . . . igniting a profound and powerful controversy." 20-5850, *id.*; 20-5852, *id.* at 4.

Sujana Chandrasekhar, a doctor who lives in New Jersey, posted about the incident on Twitter two days later. She tweeted a picture that included the numbered headshots of 45 Covington Catholic students, along with a caption that read:

> These are scary faces, indeed. #CovingtonShame 1. Stop tax breaks for 'religious' establishments. 2. Massive re-education is needed, for these children, their families, and their communities. 3. I hope they don't get to use their #whiteprivilege (except 23) like #Kavanaugh did.

20-5850, DE 1, Compl., Page ID 4–5, 11. The corner of the picture included text reading "Do you know them? The world would like to know too." *Id.* at 11.

Kathy Griffin, a comedian who lives in California, also tweeted about the incident. Her first tweet included a link to a *ThinkProgress* article titled "Video Shows 'March for Life' Students in MAGA Apparel Mocking Native American Veteran," along with a caption she wrote:

> Ps. The reply from the school was pathetic and impotent. Name these kids. I want NAMES. Shame them. If you think these fuckers wouldn't dox you in a heartbeat, think again.

20-5852, DE 1, Compl., Page ID 4, 11. Griffin tweeted two more times about the incident on the following day:

- Names please. And stories from people who can identify them and vouch for their identity. Thank you.
- Well, well, well, looking here. Maybe you should let this fine Catholic school know how you feel about their students behavior toward the Vietnam veteran, Native American #NathanPhillips.

*Id.* at 5, 12–13.

The next day, Griffin shared another user's picture of a Covington Catholic student juxtaposed next to Justice Brett Kavanaugh, titled "#TenYearChallenge," with that user's caption reading:

> One theme of the conversations of the past 24 hours = how deeply familiar this look is. It's the look of white patriarchy, of course, but that familiarity – that banality – is part of what prompts the visceral reaction. This isn't spectacular. It's life in America.

*Id*. at 5, 14. Griffin's added commentary to the quoted tweet read: "Oooh gurrrl, you've triggered lots of verrrry threatened bros. Yummy. It's delicious." *Id*. Griffin included six handclapping and waving emojis at the end of her tweet. *Id*. at 14.

The plaintiffs sued Griffin and Chandrasekhar separately in the Eastern District of Kentucky based on the parties' diversity of citizenship and an amount in controversy exceeding $75,000.00. The plaintiffs alleged civil harassment, harassing communications, menacing, and terroristic threatening (KRS 525.070, 525.080, 508.050, 508.080), along with common law invasion of privacy, against both defendants. The plaintiffs also accused Chandrasekhar of aiding and abetting "the foreseeable, wrongful and tortious conduct of other persons against the Plaintiffs." 20-5850, DE 1, Compl., Page ID 10.

On October 22, 2019, counsel for Griffin filed a one-page form document titled "Appearance of Counsel,"[1] and a pro hac vice motion. On November 8, Griffin moved to dismiss the complaint for lack of personal jurisdiction and failure to state a claim. Griffin argued that she was not subject to personal jurisdiction under Kentucky's longarm statute and that exercising jurisdiction would violate due process. She also argued that the plaintiffs had failed to state viable claims against her and that the speech at issue was protected by the First Amendment. The plaintiffs argued that Griffin waived her personal jurisdiction defense by failing to assert it when her attorney filed the Appearance of Counsel, but also that the exercise of jurisdiction satisfied both the state longarm statute and the Constitution. The district court dismissed the complaint without prejudice for lack of personal jurisdiction, holding that Griffin

---

[1]"I am admitted or otherwise authorized to practice in this court, and I appear in this case as counsel for: Defendant Kathy Griffin." 20-5852, DE 6, Appearance of Counsel, Page ID 28.

had not waived the defense and that exercising jurisdiction would offend Kentucky law and the Constitution. The plaintiffs filed a motion for reconsideration, which the district court denied.

Chandrasekhar filed a motion to dismiss the complaint for lack of personal jurisdiction, improper venue, and failure to state a claim. The district court likewise dismissed the complaint without prejudice for lack of personal jurisdiction. The plaintiffs timely appealed both dismissals and we consolidated the cases on appeal.

## II.

The plaintiffs argue that our decision in *Gerber v. Riordan*, 649 F.3d 514 (6th Cir. 2011), requires us to hold that Griffin waived her personal jurisdiction defense when her lawyer filed a notice of appearance of counsel two weeks before moving to dismiss. Griffin maintains that a notice of appearance does not waive personal jurisdiction because *Gerber* is either distinguishable or conflicts with earlier controlling Sixth Circuit precedent. The parties' dispute reflects the confusion in the district courts that *Gerber* has generated. While some district courts have concluded that *Gerber* established a bright line rule that filing a notice of appearance effects a waiver of personal jurisdiction, others have confined *Gerber* to its facts to hold that a notice of appearance alone does not constitute a waiver. We take this opportunity to clarify *Gerber* and its progeny. Filing a notice of appearance does not, on its own, cause a defendant to waive her personal jurisdiction defense.

## A.

In *Gerber*, we noted that there was a "dearth of caselaw . . . defining precisely what types of appearances and filings qualify as 'a [defendant's] legal submission to the jurisdiction of the court.'" *Gerber*, 649 F.3d at 519 (quoting *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 905 (6th Cir. 2006)). So we took the "opportunity to discuss some of the contours of this area of the law." *Id*.

In *Gerber*, the plaintiff sued an individual and a corporation alleging breach of contract and tort causes of action. 649 F.3d at 515−16. The defendants filed a pro se motion to dismiss the amended complaint for lack of personal jurisdiction. *Id*. at 516. The district court entered a

default judgment against the defendants because the corporation had failed to secure an attorney as required by law. *Id*. The defendants retained an attorney, who entered an appearance of counsel,**2** and then moved to stay the litigation pending arbitration and to vacate the default judgment, which the district court granted. *Id*. The defendants subsequently appeared at pretrial conferences, consented to a magistrate judge's jurisdiction including for entry of judgment, and submitted discovery responses. *Id*. at 516–17. Three years after the defendants retained counsel, they filed a motion to dismiss for lack of personal jurisdiction, which the district court granted. *Id*. at 517.

This court reversed, holding that the defendants had waived the personal jurisdiction defense. We described waiver as a fact-specific inquiry into whether "[t]he actions of the defendant . . . amount[ed] to a legal submission to the jurisdiction of the court." *Id*. at 518 (quoting *Days Inns Worldwide*, 445 F.3d at 905). Voluntarily using "certain [district] court procedures" may "serve as 'constructive consent to the personal jurisdiction of the [district] court,'" though not all will. *Id*. at 519 (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704 (1982)). "Only those submissions, appearances and filings that give '[the plaintiff] a reasonable expectation that [the defendant] will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking,' result in waiver of a personal jurisdiction defense." *Id*. (quoting *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assoc. of Houston Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)).

The source of subsequent confusion arose from *Gerber*'s conclusion about the point at which the defendants had waived personal jurisdiction. Although the *Gerber* court chronicled three years of the defendants' litigation conduct, it ultimately decided that the defendants had waived the personal jurisdiction defense when counsel first filed the notice of appearance. *Id*. at 520. The court concluded that filing the notice constituted a general appearance, and "a party waives the right to contest personal jurisdiction by failing to raise the issue when making a

---

**2**This was a one-sentence notice of appearance of counsel that read: "Now comes Richard M. Kerger and enters his appearances [*sic*] as counsel for defendants, James C. Riordan and Seven Locks Press Corp. in this matter." *Id*. at 524 (Moore, J., concurring).

responsive pleading or a general appearance." *Id*. (quoting *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1120 (6th Cir. 1994)). The court did not apply the test it had just delineated, failing to explain how a notice of appearance gave the plaintiffs a reasonable expectation of the defendants' intention to defend the suit on the merits, or caused the district court to go to some wasted effort.

A year later, we characterized *Gerber* as "clarif[ying] the test for finding forfeiture of a personal-jurisdiction defense through conduct." *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012).[3] To determine whether the defense is forfeited, courts must "consider all of the relevant circumstances," which requires asking whether the defendant's conduct has given the court and the plaintiff a reasonable expectation that the defendant intends to defend the suit on the merits. *Id*. In *King*, the defendant's counsel filed a written appearance before moving to dismiss for lack of service of process.[4] *Id*. at 660 n.7. We said that filing the notice of counsel "d[id] not constitute forfeiture." *Id*. Referencing *Gerber*, we stated that "[i]nsofar as some of our more recent cases might suggest otherwise, they must yield to *Friedman* [*v. Estate of Presser*]," which had noted "that an appearance by counsel, filed after properly raising lack of proper service in the first responsive pleading, did not waive the defense." *Id*. (citing *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157 n. 7 (6th Cir. 1991).[5]

---

**[3]**The plaintiffs attempt to distinguish *King* as not pertinent to *Gerber* because "*King* is a <u>forfeiture</u> case - i.e., submission to jurisdiction via litigation conduct - not a <u>waiver</u> case - i.e, relinquishment of the defense by failing to preserve it in a first filing." 20-5852, CA6 R. 18, Reply Br., at 5–6. But our case law has not been consistent in delineating such a difference. In her *Gerber* concurrence, Judge Moore said that waiver occurred when the defendant lost the right to challenge personal jurisdiction through "participation in litigation," while "forfeiture is the failure to make the timely assertion of a right." 649 F.3d at 522 n.1 (Moore, J., concurring). This court defined the terms exactly the opposite way in *King*. There, we described waiver as a defendant's failure to preserve a defense under Rule 12, while describing forfeiture as a defendant's unintentional loss of a defense through "delay and participation in the litigation." *King,* 694 F.3d at 658 n.3. In *King*, we characterized *Gerber* as a forfeiture case, *id.* at 659, n.5, while we used the term waiver in *Gerber* itself, 649 F.3d at 519. And in *Boulger v. Woods*, we made no effort to distinguish between waiver and forfeiture, instead describing two forms of waiver: (1) waiver through failure to include defenses in a Rule 12 motion or answer, and (2) waiver through litigation conduct. 917 F.3d 471, 476–77 (6th Cir. 2019). The distinction that the plaintiffs attempt to draw does not exist in our case law.

**[4]**Counsel filed the appearance after properly filing the answer, which had included the defense of insufficient service.

**[5]**Although *King* described *Friedman* as a case where the responsive pleading was filed before the appearance, it appears that the responsive pleading was filed after the appearance was entered. The defendant in *Friedman* appeared to join the motion for a stay, and we said that he "at that time put plaintiffs on notice that service

Two later decisions muddled the situation further. In an unpublished case, this court said that "*Gerber*'s rule" required holding that the defendants waived their personal jurisdiction defense when their counsel first filed notices of appearance of counsel.[6] *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 508 F. App'x 498, 502 (6th Cir. 2012). But we recently said that "[d]etermining what constitutes waiver by conduct is more [an] art than a science . . . and there is no bright line rule." *Boulger v. Woods*, 917 F.3d 471, 477 (6th Cir. 2019) (internal citation omitted).[7]

Taken together, *Gerber*, *King*, *M & C Corp.*, and *Boulger* have failed to give adequate guidance to district courts over whether a notice of appearance causes a waiver or forfeiture of a personal jurisdiction defense. *See, e.g.*, *Schall v. Suzuki Motor of Am., Inc.*, No. 4:14-CV-00074-JHM, 2017 WL 2059662, at *2 (W.D. Ky. May 12, 2017) ("The Sixth Circuit has sent mixed signals in recent cases on what constitutes forfeiture of a Rule 12 defense like personal jurisdiction."). A number of district courts have held that *Gerber* "articulated a bright-line waiver rule for objections to personal jurisdiction" so that the entry of a general appearance, such as filing a notice of appearance of counsel, waives the defense. *Leadford v. Bull Moose Tube Co.*, No. 15-CV-13565, 2016 WL 1022965, at *2 (E.D. Mich. Mar. 15, 2016); *see also Kenyon v. Clare*, No. 3:16-CV-00191, 2016 WL 6995661, at *3 (M.D. Tenn. Nov. 29, 2016). District courts adopting that rule have tried various methods of limiting its severe scope. *See, e.g.*, *Leadford*, 2016 WL 1022965, at *3 (holding that *Gerber* "waiver rule" did not apply to Rule 12(b)(3) motions); *Visser v. Caribbean Cruise Lines, Inc.*, No. 1:13-CV-1029, 2014 WL 12921353, at *8 (W.D. Mich. Apr. 4, 2014) (interpreting *Gerber* as establishing a first-filing rule, meaning that a notice of appearance of counsel does not waive the defense so long as it is

---

of process was defective." 929 F.2d at 1154. The defendant subsequently filed a motion to dismiss the complaint, raising the defective service of process defense. *Id*.

[6]As in *Gerber*, it did not matter to the court that the appearances were entered in direct response to a district court's order. In *Gerber*, the appearance was entered directly in response to the district court's order that the corporation "cause an appearance to be filed on its behalf by counsel or otherwise show why its default should not be entered and further proceedings scheduled accordingly." 649 F.3d at 524 (Moore, J., concurring). In *M & C Corp.*, the appearance was in response to the district court's order that the two defendants—nonparties at the time—appear in court to show cause why they should not be held in contempt for violating an injunction. 508 F. App'x at 500.

[7]Although *Boulger* involved the issue of waiver, it did not involve a notice of appearance of counsel.

not the first document filed).**[8]**  On the other side, numerous district courts have held that a notice of appearance of counsel does not waive a Rule 12(b) defense, interpreting *Gerber* instead "as endorsing a case-specific inquiry into a defendant's conduct" and confined to facts involving years of litigation.  *See, e.g.*, *ABG Prime Grp., LLC v. Innovative Salon Prods.*, 326 F. Supp. 3d 498, 504 (E.D. Mich. 2018) (collecting cases).

We read *Gerber* in context as relying on the defendants' extensive participation in litigation, not as establishing a rule that filing a notice of appearance automatically waives the personal jurisdiction defense.  To the extent that *Gerber* can be read as creating such a rule, that rule is inconsistent with earlier circuit precedent and thus not binding.

B.

As we said in *King*, *Gerber*'s conclusion that a notice of appearance waived personal jurisdiction must be read in the context of the defendants' extensive participation in the litigation.  Otherwise, *Gerber's* outcome is inconsistent with its own reasoning, which endorsed a fact-specific inquiry into the defendants' conduct.  By itself, a "*pro forma* notice of appearance of counsel," often only one page or sentence, is not "the sort of participation in litigation that constitutes a submission to the personal jurisdiction of the district court."  *Gerber*, 649 F.3d at 524 (Moore, J., concurring).  It does not give plaintiffs "a reasonable expectation" that the defendant "will defend the suit on the merits."  *Id.* at 519.  Nor does the notice, on its own, "cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking."  *Id*. (internal citation omitted).  The point of the notice is to comply with local rules requiring an attorney to appear before representing a party and to allow the attorneys to "receive notification of docket entries by email, offering the most efficient way to stay current on the case."  *ABG Prime Grp.*, 326 F. Supp. 3d at 505.

---

**[8]**That distinction does not comport with *Gerber* itself, where the first thing filed was a pro se motion to dismiss for lack of personal jurisdiction.  Although the pro se motion was improper because corporate defendants may not appear pro se, *see United States v. 9.19 Acres of Land, More or Less, in Marquette Cnty*., *Mich*., 416 F.2d 1244, 1245 (6th Cir. 1969), the motion was still pending "at the time that the defendants filed the Entry of Appearance."  *Gerber*, 649 F.3d at 524 (Moore, J., concurring).  It was not until about two months later that "the district court issued an order that 'deemed' the pro se motion to dismiss for lack of personal jurisdiction 'withdrawn, *without prejudice to defendants' right to renew said motion*,'" when it "was clear to everyone" that "the defendants still retained the right to assert their personal-jurisdiction defense."  *Id*. at 524–25.

*King* made clear that *Gerber* is limited to its foundation as requiring a case-specific analysis of a defendant's litigation conduct to determine forfeiture. Read in context, *Gerber* did not establish a bright line rule that a notice of appearance of counsel waives personal jurisdiction.[9] In concluding that the defendants had waived jurisdiction, *Gerber* said that "a party waives the right to contest personal jurisdiction by failing to raise the issue when making a responsive pleading or a general appearance." *Id.* (quoting *Reynolds*, 23 F.3d at 1120). But the quoted language from *Reynolds* was itself sourced from an earlier case where we found waiver only after a fact-specific inquiry into the defendant's "appearance *and participation* in the litigation," including arguing the merits of the plaintiff's motion for the court to enforce a bankruptcy order. *In Re Wolverine Radio Co.*, 930 F.2d 1132, 1137 n.5 (6th Cir. 1991) (emphasis added). This history confirms that *Gerber* requires a fact-specific analysis of a defendant's litigation conduct, and a defendant's mere appearance—without participation—does not waive the defense of personal jurisdiction.

*Gerber* involved more than mere appearance: the defendants participated in the litigation for three years before raising the defense of personal jurisdiction. Indeed, our subsequent cases have largely cited *Gerber* for its fact-specific inquiry into the defendant's litigation conduct, rather than as establishing any sort of bright line rule. *See, e.g.*, *Wells v. Rhodes*, 592 F. App'x 373, 378 (6th Cir. 2014) (defendant waived defense where he "voluntarily appeared and participated in a hearing on the merits without asserting defective service defense or objecting to the court's jurisdiction over him"); *State Auto Ins. Co. v. Thomas Landscaping & Const., Inc.*, 494 F. App'x 550, 553–54 (6th Cir. 2012) (holding that defendant corporation waived personal jurisdiction defense after failing to include it in pro se answer and participating in pretrial conference at which defendant stated that it would not challenge personal jurisdiction); *Boulger*, 917 F.3d at 477 ("[T]here is no bright line rule" for "[d]etermining what constitutes waiver by conduct.").

Further, a bright line rule that filing a notice of appearance waives personal jurisdiction is inconsistent with earlier circuit precedent. *See United States v. Simpson*, 520 F.3d 531, 539 (6th Cir. 2008) (noting that the earlier of two conflicting panel holdings controls). In two earlier

---

[9]*M & C Corp.*, which reached the opposite conclusion, was unpublished and is therefore not binding.

decisions, we did not construe a notice of appearance (or a motion to stay the proceedings) as effecting a waiver of personal jurisdiction on its own.  *See, e.g.*, *Rauch v. Day & Night Mfg. Corp.*, 576 F.2d 697, 702 (6th Cir. 1978) (holding that defendants waived personal jurisdiction "[b]y filing an appearance, by stipulating for a stay of proceedings[,] by filing a motion to dismiss on the basis of the statute of limitations, and by entering into an extended discovery").  Importantly in *Rauch*, it was the totality of the litigation conduct, not just a notice of appearance, that caused the defendants to waive the defense.  In another case, we acknowledged that the defendant had first "made an appearance, through his attorneys, when he filed a response to plaintiffs' motion to stay all proceedings."  *Friedman*, 929 F.2d at 1157 n.7.  Nevertheless, we concluded that he had not waived his personal jurisdiction defense because "his first pleading specifically contested the insufficiency of service of process."  *Id*. (emphasis omitted).  A bright line waiver rule would require overruling *Rauch* and *Friedman*, which the *Gerber* panel neither did nor had the power to do.

A bright line rule is also inconsistent with Rule 12, which states that a defendant must raise the defenses of lack of personal jurisdiction, improper venue, improper process, and improper service of process in a pre-answer motion or answer, whichever is filed first, or the defense is waived.  Fed. Rule Civ. Pro. 12(h).[10]  In other words, "a defendant who wishes to raise a defense to the court's personal jurisdiction must do so when he makes his 'first defensive move.'"  *Rauch*, 576 F.2d at 701.  Rule 12 "says nothing about the effect of notice-giving documents or documents entered in response to a court order."  *Gerber*, 649 F.3d at 525 (Moore, J., concurring); *see also Pouyeh v. Pub. Health Tr. of Jackson Health Sys.*, 718 F. App'x 786, 791 (11th Cir. 2017) ("[N]othing in Rule 12 contemplates that an attorney's entry of a notice of appearance on a defendant's behalf amounts to a waiver of a Rule 12 defense.  Nor would it make much sense if it did, because the notice is not a response to the complaint.").

The requirement of personal jurisdiction flows from the Due Process Clause.  Although it may be waived, it should not be waived unwittingly.  Rule 12 was "designed to protect parties

---

[10]"A party waives any defense listed in Rule 12(b)(2)–(5) by: . . . (B) failing to either: (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment allowed by Rule 15(a)(1) as a matter of course."

from the unintended waiver of any legitimate defense or objection." *Rauch*, 576 F.2d at 701 n.3. Requiring the Rule 12(b) defenses to be presented together created a "hazard" only for "motion-minded lawyers who, from force of habit or lack of good faith, cannot close their pleadings or come to issue without attempting to make numerous motions." *Id*. But interpreting *Gerber* as establishing a notice-of-appearance-is-waiver rule causes parties to unknowingly waive their right to contest personal jurisdiction, presenting a hazard to every attorney accustomed to filing the routine notice in other federal courts. Such a rule does not advance "the objective of [Rule 12,] [which] is to eliminate unnecessary delay at the pleading stage." *Id*.

The plaintiffs counter that defendants may preserve their personal jurisdiction defense by filing a special appearance, filing a general appearance preserving their jurisdictional defense, or first filing a responsive pleading. At least one district court has adopted this erroneous view. *Kenyon*, 2016 WL 6995661, at *3 (applying *Gerber* to hold that notice of appearance caused defendant to waive her personal jurisdiction defense, but she would not have waived it had she filed a special appearance instead). But it is clear that "to the extent that the *Gerber* principle . . . relies on a distinction between special and general appearances, this distinction was abolished by Federal Rule of Civil Procedure 12." *M & C Corp.*, 508 F. App'x at 504 (Moore, J. concurring). Numerous pre-*Gerber* decisions held that "it is no longer necessary to enter a 'special appearance'" "[i]n order to object to a court's exercise of personal jurisdiction." *Cnty. Sec. Agency v. Ohio Dep't of Com.*, 296 F.3d 477, 483 (6th Cir. 2002); *see also Haile v. Henderson Nat'l Bank*, 657 F.2d 816, 820 n.4 (6th Cir. 1981) ("We note that a 'special appearance' to challenge jurisdiction is no longer necessary under the Federal Rules. A defendant must attack the validity of service of process pursuant to Rule 12(b)."). We must follow that authority.

A defendant need not file a special appearance to preserve her personal jurisdiction defense. Rather, a defendant must comply with Rule 12, which requires only that she include her defenses in her first responsive pleading. The defendant may waive her defense if the district court, after "consider[ing] all of the relevant circumstances," *King*, 694 F.3d at 659, determines that the defendant's litigation conduct gave the plaintiff a "reasonable expectation" that the defendant intended to "defend the suit on the merits" or the conduct "cause[d] the court to go to some effort that would be wasted if personal jurisdiction is later found lacking." *Gerber*, 649

F.3d at 519 (internal citation omitted). As a notice of appearance of counsel does neither, filing such a notice does not on its own constitute waiver.

## C.

Accepting that, we turn to the district court's consideration of whether Griffin waived her personal jurisdiction defense through her litigation conduct. We "review a district court's ruling on forfeiture for an abuse of discretion."[11] *King*, 694 F.3d at 659; *see also Boulger*, 917 F.3d at 476 ("We review a district court's ruling on waiver for an abuse of discretion." (citing *King*, 694 F.3d at 659)). "An abuse of discretion occurs if the district court relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *King*, 694 F.3d at 660 (quoting *In re Whirlpool Corp. Front-Loading Washer Prods. Liability Litig.*, 678 F.3d 409, 416 (6th Cir. 2012)). "And our analysis must be deferential to the district court's assessment of the situation." *Boulger*, 917 F.3d at 477; *cf. King*, 694 F.3d at 660 ("Despite the absence of any legal error or clearly erroneous findings of fact, we conclude that Taylor's forfeiture [of the defense of lack of service of process] in this case was so clear that the district court abused its discretion in ruling otherwise.").

The district court correctly determined that a notice of appearance does not by itself waive personal jurisdiction. Then, as required by *Gerber*, the district court undertook a fact-specific inquiry into Griffin's litigation conduct, "consider[ing] all of the relevant circumstances," *King*, 694 F.3d at 659, to determine whether she had acted in a way that "amount[ed] to a legal submission to the jurisdiction of the court." *Gerber*, 649 F.3d at 518 (quoting *Days Inns Worldwide*, 445 F.3d at 905). The two factors that the district court must consider are whether the defendant gave the plaintiff "a reasonable expectation that [the defendant] will defend the suit on the merits," and whether the defendant "cause[d] the court to

---

[11]In *King*, we noted that "we considered anew whether the defendant had forfeited its personal-jurisdiction defense through its conduct" in *Gerber* "because the plaintiff's claim of forfeiture was raised for the first time on appeal, which precluded review of any exercise of discretion." *Id.* at 659 n.5. But we were clear that "*Gerber* does not require de novo review of forfeiture rulings." *Id.*

go to some effort that would be wasted if personal jurisdiction is later found lacking." *Id*. at 519 (internal citation omitted).

In considering the facts of this litigation, the district court did not abuse its discretion in holding that Griffin had not waived personal jurisdiction through her litigation conduct. This case does not present the same kind of active participation in litigation that effected a waiver in *Gerber* and *Boulger*. In *Gerber*, the defendants waited several years before moving to dismiss for lack of personal jurisdiction. And in *Boulger*, although the defendant had raised his defenses of insufficient service of process and lack of personal jurisdiction in his answer, he immediately filed a motion for judgment on the pleadings in which he did not include the defenses. 917 F.3d at 477. That motion on the pleadings "necessarily sought a decision on the merits" and was "inconsistent with the idea that the district court lacked personal jurisdiction over the defendant[]." *Id*. (quoting *Gerber*, 649 F.3d at 525). The defendant's "actions demonstrate[d] that he sought to have the district court use its power over the parties to reach a decision on the merits, and required the court to expend significant efforts in doing so," giving the plaintiff "a reasonable expectation that [he would] defend the suit on the merits." *Id*. at 477−78 (quoting *King*, 694 F.3d at 660−61).

Here, the district court pointed out that Griffin had not filed any responsive pleading that omitted the defense, nor had she "participated in any other way that would lead plaintiffs to conclude that [she] would not assert the defense." 20-5852, DE 38, Order, Page ID 224. And the district court noted that "the two-week window between the notice of appearance and the motion to dismiss did not cause the Court to engage in any efforts that would be wasted if such defense proved successful." *Id*. at 225; *see also ABG Prime Grp.*, 326 F. Supp. 3d at 505 (holding that waiting one month after "appearance neither put the court to work nor gave [the plaintiff] the impression that the [defendants] intended to litigate the merits," so "the [defendants] may challenge personal jurisdiction"). It was not an abuse of discretion for the district court to conclude on these facts that Griffin did not waive her personal jurisdiction defense through her litigation conduct.

III.

We now turn to the district court's dismissal of the suits against Griffin and Chandrasekhar for lack of personal jurisdiction, which we review de novo. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). When sitting in diversity, a federal court may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so. *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 148 (6th Cir. 1997). Determining whether a Kentucky court would have personal jurisdiction over a nonresident defendant consists of a two-step process. *Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). First, the cause of action must arise from the type of conduct or activity enumerated in Kentucky's longarm statute, KRS 454.210. *Id.* A defendant is not subject to personal jurisdiction in Kentucky if her alleged conduct falls outside one of the nine enumerated categories, "regardless of whether federal due process might otherwise allow the assertion of *in personam* jurisdiction." *Id.* at 56. Second, if the longarm statute is satisfied, the court must determine whether exercising personal jurisdiction over the nonresident defendant comports with her federal due process rights. *Id.* at 57. For the reasons we discuss, exercising personal jurisdiction over the defendants does not comply with either the Kentucky longarm statute or due process.

A.

The plaintiffs invoke only one provision of Kentucky's longarm statute to establish jurisdiction over Griffin and Chandrasekhar, KRS 454.210(2)(a)(3), which provides for personal jurisdiction over a defendant who causes "tortious injury by an act or omission in this Commonwealth." The plaintiffs argue that the longarm statute covers out-of-state "criminally tortious communications" that cause injury in Kentucky. The logic is that Griffin's and Chandrasekhar's tweets violated various Kentucky criminal statutes, for which Kentucky law provides a private right of action, and are therefore "acts" within the meaning of KRS 454.210(2)(a)(3). Griffin and Chandrasekhar argue that they are not subject to jurisdiction under (2)(a)(3) because they committed no "acts" within Kentucky.

The defendants' conduct is plainly outside the scope of the Kentucky longarm statute, since neither Griffin nor Chandrasekhar committed any act "in [the] Commonwealth" of Kentucky.  KRS 454.210(2)(a)(3); *see also Caesars Riverboat*, 336 S.W.3d at 57–58 (holding this provision inapplicable where defendants' "act or omission" occurred in another state).  The plaintiffs attempt to avoid this obvious textual barrier by arguing that because the Kentucky legislature adopted laws criminalizing harassment, threats, and menacing, which focus on the harm felt by citizens in Kentucky, that "the victim's receipt of the threat [is] the foundational 'act' occurring in the State."  20-5850, CA6 R. 17, Appellants' Br., at 17; 20-5852, CA6 R. 14, Appellants' Br., at 23.  Alternatively, the plaintiffs assert that the Supreme Court's "true threat" doctrine holds that that "criminal communicative acts occur where received."  20-5850, *id*.; 20-5852, *id*. at 24.

Kentucky law does not support the plaintiffs' theory.  In *Pierce v. Serafin*, the Kentucky court of appeals distinguished between tortious acts and tortious consequences.  787 S.W.2d 705, 706 (Ky. Ct. App. 1990).[12]  Merely causing a "consequence" in Kentucky is insufficient to establish personal jurisdiction under KRS 454.210(2)(a)(3).  *Id*.  To satisfy that provision of the longarm statute, the "cause of action must arise from defendant's activities" in Kentucky.  *Id.*  In *Pierce*, the court of appeals held that KRS 454.210(2)(a)(3) was not satisfied when the conduct alleged was an out-of-state defendant's mailing of a letter to a Kentucky resident, containing allegedly tortious information about another Kentucky resident.[13]  *Id*.  While the letter caused a consequence in Kentucky, it was "clear" that the defendant "ha[d] not acted in the Commonwealth of Kentucky."  *Id.*; *see also Powers v. Park*, 192 S.W.3d 439, 442 (Ky. Ct. App. 2006) (nonresident doctor not subject to personal jurisdiction even where medical opinion was "directed at Kentucky resident with the intent to control the course of [plaintiff's] treatment in Kentucky," and doctor "accepted the referral of business from Kentucky and was compensated for his work").  The plaintiffs present an even weaker case for personal jurisdiction over Griffin

---

[12]Although the plaintiffs frame personal jurisdiction in this case as a "matter of first impression" in Kentucky, *Pierce* is directly on point.  20-5850, CA6 R. 17, Appellants' Br., at 13; 20-5852, CA6 R. 14, Appellants' Br., at 20.  *Pierce* involved a written letter while these cases involve tweets, but the plaintiffs' counsel conceded that tweets should not be treated any differently than letters.  Oral argument at 7:55–8:05.

[13]The plaintiff alleged that the letter was an invasion of privacy, which is one of the torts that the plaintiffs in these cases have alleged against Griffin and Chandrasekhar.

and Chandrasekhar than existed in *Pierce*. Unlike the defendant in *Pierce*, who intentionally directed a letter into Kentucky, Griffin and Chandrasekhar did not direct their tweets into the state.

Other provisions of the Kentucky longarm statute confirm that (2)(a)(3) does not apply to those who act outside of Kentucky. The very next provision extends personal jurisdiction to defendants who cause "tortious injury in this Commonwealth by an act or omission *outside this Commonwealth*" if they regularly do business or "engage[] in any other persistent course of conduct" in Kentucky. KRS 454.210(2)(a)(4) (emphasis added). The necessity of (2)(a)(4) "would be completely obviated [if] every set of facts which gave rise to tortious injury could be brought within the terms of" (2)(a)(3). *Pierce*, 787 S.W.2d at 706–07. Kentucky "has elected to assume personal jurisdiction over a nonresident tort-feasor whose activities outside the state result in injury in this state only if that tort-feasor regularly does or solicits business within the state or has other substantial connection to the Commonwealth." *Id.* at 707. Moreover, the Kentucky legislature knew how to subject nonresidents who direct communications into the state to personal jurisdiction. *See* KRS 454.210(2)(a)(9) (extending personal jurisdiction where the claim arises from "[m]aking a telephone solicitation . . . or a charitable solicitation . . . via telecommunication, into the Commonwealth").

The plaintiffs attempt to distinguish *Pierce* by arguing that the defendants committed crimes in Kentucky and not mere torts. They argue that because Kentucky has provided a private right of action for violations of those criminal statutes, jurisdiction must exist because "where a legal right exists, a legal remedy exists." 20-5850, CA6 R. 17, Appellants' Br., at 13; 20-5852, CA6 R. 14, Appellants' Br., at 20. They assert that Kentucky requires statutes to be "liberally construed with a view to promote their objects and carry out the intent of the legislature," so "a remedial statute like Kentucky's long-arm statute 'implies an intention . . . to extend existing rights.'" 20-5850, *id.* at 13−14; 20-5852, *id.* at 20.

The plaintiffs offer no explanation for how a tort/crime distinction would transform tweets sent outside of Kentucky into "acts" within the commonwealth.**[14]** The Kentucky legislature also clearly contemplated the role that committing a crime might play in establishing personal jurisdiction. A different provision of the longarm statute establishes personal jurisdiction where the nonresident has "sexual intercourse in this state" resulting in the birth of a child when "[s]aid intercourse is a tort or a *crime* in this state." KRS 454.210(2)(a)(8)(c) (emphasis added). The legislature did not include crimes made actionable by a private right of action within the longarm statute.

While it is true that Kentucky's rules of statutory construction require that statutes be "liberally construed with a view to promote their objects and carry out the intent of the legislature," KRS 446.080(1), the Kentucky Supreme Court clearly said that the longarm statute's "limits upon jurisdiction must be observed as defined." *Caesars Riverboat*, 336 S.W.3d at 56. "Thus, non-resident defendants whose activities fall outside the criteria of KRS 454.210 may not be subjected to long-arm jurisdiction." *Id*. The fact that the Kentucky legislature has created a civil cause of action does not mean that every defendant is automatically subject to personal jurisdiction in Kentucky. Instead, the plaintiff must point to a specific provision of the longarm statute that confers jurisdiction in the case. The plaintiffs have confused the issue of whether they have a claim at all with the issue of whether they may subject the defendants to litigation in their chosen forum. *See* 20-5850, CA6 R. 18, Appellee's Br., at 10 ("Taken literally, Appellants' argument would negate completely the requirement for a plaintiff to establish personal jurisdiction in addition to identifying a cognizable claim.").

---

**[14]**None of the "true threat" cases that the plaintiffs cite have any bearing on the question of personal jurisdiction, nor do they stand for the proposition that a court may properly adjudicate the case in the forum where the target of the threat received it. *Virginia v. Black* dealt with the constitutionality of Virginia's cross burning statute. 538 U.S. 343 (2003). The other three cases the plaintiffs cite are all criminal cases in which the defendants were convicted under 18 U.S.C. § 875(c), which makes it a federal crime to transmit in interstate commerce any communication containing a threat to injure another person. *United States v. Jeffries*, 692 F.3d 473, 483 (6th Cir. 2012), rejected the defendant's challenge to venue because § 875(c) allows for prosecution "in any district in which such offense was begun, continued, or completed," 18 U.S.C. § 3237(a). *United States v. Wheeler* reversed a conviction based on faulty jury instructions but held that the evidence was not insufficient to sustain a conviction. 776 F.3d 736, 738 (10th Cir. 2015). And *United States v. Alkhabaz* held that the communications at issue did not qualify as threats under the statute. 104 F.3d 1492, 1496 (6th Cir. 1997). These cases are entirely irrelevant to the question of whether Griffin and Chandrasekhar committed "acts" in Kentucky to satisfy the state's longarm statute.

The plaintiffs do not point to a single case in which Kentucky or a court applying Kentucky law has extended personal jurisdiction under (2)(a)(3) to a nonresident defendant who acted outside the forum, even where harmful consequences occurred inside the forum. When sitting in diversity, "[w]ithout some authoritative signal from the state's legislature or judiciary" federal courts "should be extremely cautious about adopting 'substantive innovation' in state law." *State Auto Prop. & Cas. Ins. Co. v. Hargis*, 785 F.3d 189, 195 (6th Cir. 2015) (quoting *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 578 (6th Cir. 2004)). We decline to adopt the plaintiffs' atextual, novel theory that acts outside of Kentucky satisfy (2)(a)(3).

B.

In any event, exercising jurisdiction over the defendants would not comply with due process. Due process requires that an out-of-state defendant have "minimum contacts" with the forum state sufficient to comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The "minimum contacts" analysis depends on the defendant's contact with the forum, "not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The defendant must "purposefully avail[] [herself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws," which "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). A defendant may be subject to personal jurisdiction even if she does not physically enter the forum state, if her "efforts are 'purposefully directed' toward residents of another State," *id*. at 476, but "the plaintiff cannot be the only link between the defendant and the forum," *Walden*, 571 U.S. at 285.

The plaintiffs argue that under *Calder v. Jones*, 465 U.S. 783 (1984), the defendants' "intentional tortious conduct" means that the defendants have purposefully availed themselves of acting in Kentucky and are thus subject to jurisdiction. 20-5850, CA6 R. 17, Appellants' Br., at 22; 20-5852, CA6 R. 14, Appellants' Br., at 28. Griffin and Chandrasekhar argue that under *Walden*, their connection to Kentucky is insufficient to sustain jurisdiction because they never entered the forum nor directed their tweets to anyone in the forum.

In *Calder*, the Supreme Court held that California could exercise jurisdiction over Florida defendants where the defendants had published an allegedly defamatory newspaper article about the California plaintiff.  465 U.S. at 791.  The Court found the defendants' contacts with California to be "ample": they had made numerous phone calls to sources located in California to write the article, they wrote about the plaintiff's activities in California, the story allegedly caused reputational injury in California where the publication was "widely circulated," and the plaintiffs suffered the "brunt" of the injury in California.  *Walden*, 571 U.S. at 287 (citing *Calder*, 465 U.S. at 788–89).  Jurisdiction was proper because "California [wa]s the focal point both of the story and of the harm suffered."  *Calder*, 465 U.S. at 789.

In *Walden*, the Supreme Court held that a Georgia defendant was not subject to personal jurisdiction in Nevada when the defendant seized money and drafted an allegedly false affidavit about the Nevada plaintiffs.  *Walden*, 571 U.S. at 279−81.  The defendant had "formed no jurisdictionally relevant contacts with Nevada" because he "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada."  *Id*. at 289.  It was not sufficient that the plaintiffs had "strong forum connections" and suffered "foreseeable harm" in the forum state.  *Id*.  "The proper question is not where the plaintiff experienced a particular injury or effect but whether the defendant's conduct connects him to the forum in a meaningful way."  *Id*. at 290.  And the defendant's "actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections."  *Id*. at 289.

The plaintiffs do not point to a single case in which a court extended personal jurisdiction based on a defendant's allegedly tortious postings on social media.**15**  The Sixth Circuit cases on which the plaintiffs rely all involved out-of-state defendants who had sent numerous tortious

---

**15**Our sister circuits have routinely held that "posting allegedly defamatory comments or information on an internet site does not, without more, subject the poster to personal jurisdiction wherever the posting could be read (and the subject of the posting may reside)."  *Shrader v. Biddinger*, 633 F.3d 1235, 1241 (10th Cir. 2011); *see also id*. ("[I]n considering what 'more' could create personal jurisdiction for such activities, courts look to indications that a defendant deliberately directed its message at an audience in the forum state and intended harm to the plaintiff occurring primarily or particularly in the forum state"); *Johnson v. Arden*, 614 F.3d 785, 797 (8th Cir. 2010) (holding that Colorado defendant who posted an allegedly defamatory statement online about the Missouri plaintiff's business "does not create the type of substantial connection between [the defendant] and Missouri necessary to confer specific personal jurisdiction").

communications directly to plaintiffs in the forum state, and every case involved a pre-existing business relationship. *See Power Investments*, *LLC v. SL EC, LLC*, 927 F.3d 914, 919 (6th Cir. 2019) (holding that Kentucky could exercise jurisdiction over nonresident defendant who had "extensively" communicated with Kentucky plaintiff about deal to purchase a power plant for "well over a year"); *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 551 (6th Cir. 2007) (holding that nonresident defendants were subject to jurisdiction in Michigan based on their extensive business relationship with a Michigan company); *Neal v. Janssen*, 270 F.3d 328, 333 (6th Cir. 2001) (holding that Tennessee could exercise jurisdiction over nonresident who "engaged in a business transaction with [Tennessee] plaintiffs that went on over a substantial period of time" and then "defrauded plaintiffs").

Instead, we have held that personal jurisdiction is absent when the communication was not specifically directed at the forum state. In *Reynolds*, we held that a London-based association was not subject to jurisdiction in Ohio when it published a press release about the Ohio plaintiff's disqualification from an international track competition after a failed drug test. *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1114 (6th Cir. 1994). We distinguished *Calder* because the press release concerned the plaintiff's activities while abroad rather than in Ohio, the source of the report was a drug sample taken and tested abroad, the plaintiff was an international athlete whose professional reputation was not centered in Ohio, the defendant did not publish or circulate the report in Ohio, and Ohio was not the "focal point" of the report. *Id*. at 1120. In another case, we declined to subject the defendant to jurisdiction in Ohio because "while the 'content' of the [allegedly defamatory] publication was about an Ohio resident, it did not concern that resident's Ohio activities" and "nothing on the website specifically target[ed] or [wa]s even directed at Ohio readers, as opposed to the residents of other states." *Cadle Co. v. Schlichtmann*, 123 F. App'x 675, 679 (6th Cir. 2005).[16]

---

[16]Our sister circuits have likewise declined to subject defendants to jurisdiction where the communication was not specifically directed at the forum state. *See Revell v. Lidov*, 317 F.3d 467, 475 (5th Cir. 2002) (nonresident defendant not subject to jurisdiction in Texas because allegedly tortious online post about airplane bombing "was presumably directed at the entire world" and "certainly it was not directed specifically at Texas, which has no especial relationship to the Pan Am 103 incident"); *Young v. New Haven Advocate*, 315 F.3d 256, 258–59 (4th Cir. 2002) (declining to subject two Connecticut-based newspapers to jurisdiction in Virginia for publishing online articles allegedly defaming Virginia prison warden because they "did not manifest an intent to aim their websites or the posted articles at a Virginia audience").

Neither Griffin nor Chandrasekhar had any preexisting relationship with the plaintiffs, business or otherwise. They also took no affirmative steps to direct any communications to the plaintiffs or to anyone else in Kentucky, and they did not otherwise avail themselves of the benefits and protections of Kentucky's laws. There is no evidence that the defendants posted the tweets hoping to reach Kentucky specifically as opposed to their Twitter followers generally. Chandrasekhar called for an end to "tax breaks for 'religious' establishments," "massive re-education," and stated that she hoped that the plaintiffs would not be able to exercise their "white privilege." 20-5850, DE 1, Compl., Page ID 4–5, 11. Both Chandrasekhar and Griffin tweeted that the students warranted "shame." Those messages were not "specifically target[ed] or . . . even directed at [Kentucky] readers, as opposed to the residents of other states." *Cadle*, 123 F. App'x at 679. And the complaints do not allege that either defendant has any Twitter followers in Kentucky or that anyone in Kentucky actually read the tweets.

The plaintiffs disagree, arguing that Griffin and Chandrasekhar "deliberately directed [their] message" to a Kentucky audience by urging people to identify and shame the students in Kentucky and contact their school located in Kentucky. 20-5850, CA6 R. 19, Reply Br., at 12; 20-5852, CA6 R. 18, Reply Br., at 16. While the plaintiffs allege that those messages caused third parties to "dox" the plaintiffs in Kentucky, the Supreme Court has "consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between . . . third parties[] and the forum State." *Walden*, 571 U.S. at 284. Rather, "it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State." *Id.* at 291. And Griffin's and Chandrasekhar's tweets formed no contacts. They "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to" Kentucky. *Id.* at 289. The tweets "did not create sufficient contacts" with Kentucky "simply because" the plaintiffs have Kentucky connections. *Id.*

Although the plaintiffs allege that they suffered harm in Kentucky, Kentucky was not "the focal point . . . of the story." *Calder*, 465 U.S., at 789; *see also Reynolds*, 23 F.3d at 1120. "Unlike the broad publication of the forum-focused story in *Calder*," *Walden*, 571 U.S. at 290, the tweets focused on the plaintiffs' conduct while they attended a protest in Washington, D.C., and did not concern their activities in Kentucky. The plaintiffs' alleged harm—being identified

and "shamed" as the students present at the Lincoln Memorial—"is not the sort of effect that is tethered to [Kentucky] in any meaningful way." *Id.* Indeed, it is not clear from the complaints whether the plaintiffs were even themselves present in Kentucky at the time that the tweets were published or read.[17] As in *Walden*, the plaintiffs were allegedly injured in Kentucky "not because anything independently occurred there, but because [Kentucky] is where [the plaintiffs] chose to be." *Id*. The plaintiffs "would have experienced this same" harm "wherever else they might have traveled." *Id*.

The Constitution forbids conferring jurisdiction in such a case.

IV.

In conclusion, we affirm the district court's dismissal of the complaints for lack of personal jurisdiction. The Kentucky longarm statute does not provide for jurisdiction over Griffin and Chandrasekhar, and, in any event, the exercise of jurisdiction would offend due process. Griffin did not waive the personal jurisdiction defense because filing a notice of appearance of counsel, without more, does not cause a waiver.

---

[17]Both Griffin and Chandrasekhar tweeted early on January 20, 2019 about the incident, which occurred on January 18. The complaints do not specify when the students returned home to Kentucky. That is exactly the point: the plaintiffs' alleged harm would have occurred wherever the plaintiffs happened to be located.