In the

# United States Court of Appeals

## For the Seventh Circuit

No. 09-2658

MOBILE ANESTHESIOLOGISTS CHICAGO, LLC,
an Illinois limited liability company,

*Plaintiff-Appellant,*

*v.*

ANESTHESIA ASSOCIATES OF HOUSTON METROPLEX, P.A.,
a Texas professional association,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 1:09-cv-00941—**Charles R. Norgle, Sr.**, *Judge.*

ARGUED APRIL 2, 2010—DECIDED OCTOBER 1, 2010

Before FLAUM, WOOD, and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Plaintiff Mobile Anesthesiologists Chicago is a company based in Chicago that contracts with medical offices to provide on-site anesthesia services. Defendant Anesthesia Associates of Houston Metroplex is a much smaller operation consisting of one doctor providing similar services in Houston, Texas. We

refer to the parties as Mobile/Chicago and Mobile/Houston. Mobile/Chicago brought suit against Mobile/Houston in federal court in Illinois claiming that Mobile/Houston violated the federal anti-cybersquatting statute by registering a domain name confusingly similar to Mobile/Chicago's registered trademark. The district court dismissed the suit for lack of personal jurisdiction.

We affirm. First, we conclude that Mobile/Houston did not waive its personal jurisdiction defense by asking to delay a preliminary injunction hearing or by asking for expedited discovery to prepare for that hearing. Second, we agree with the district court that Mobile/Houston lacked the required "minimum contacts" with Illinois to support personal jurisdiction there. Mobile/Chicago relies principally on the inference that Mobile/Houston expressly aimed its conduct in Texas at harming Mobile/Chicago in Illinois. That inference is based on two inadequate connections between Mobile/Houston and Illinois: (1) Mobile/Houston's creation of a website accessible in Illinois but aimed only at the Houston market, combined with Mobile/Houston's constructive notice of Mobile/Chicago's trademark via federal registration of that mark; and (2) Mobile/Houston's receipt of Mobile/Chicago's cease-and-desist letter. These contacts are not sufficient to establish that Mobile/Houston's activities in Texas were calculated to cause harm in Illinois.

I. *Factual and Procedural Background*

Mobile/Chicago has been operating in the Chicago area since 1996. The company has affiliated offices in other

cities, including Houston. The record does not reveal exactly when Mobile/Chicago's Houston affiliate began operations, but Mobile/Chicago alleges that it advertised its services in Houston in 2008.

In 2003, Mobile/Chicago registered the website <www.mobileanesthesiologists.com>, which it continues to operate today. Mobile/Chicago also owns a federally registered trademark in the words MOBILE ANESTHESI-OLOGISTS. It obtained the trademark registration in 2005.

Mobile/Houston was established by Dr. Eric Chan, its sole member, in 2007. On August 22, 2008, Dr. Chan registered the website <www.mobileanesthesia.com>. Working under Mobile/Houston's name, Dr. Chan operates as an independent contractor providing anesthesia services for patients in clinics and medical offices throughout the Houston area.

Dr. Chan's professional activities are limited entirely to the state of Texas. He is licensed as an anesthesiologist by the State of Texas but has not been licensed in any other state. He has never advertised his services other than on his website (which offers anesthesia services "in the greater Houston area" and provides a Houston-area phone number) and in a printed advertisement published in Texas.

Dr. Chan has visited Illinois just once, on vacation in 2003. He has never visited Illinois for business, has never conducted business in Illinois, and has no agent or offices in Illinois. He has never attended events or performed duties in Illinois for any of the professional associations to which he belongs. And although he surely knew there were anesthesiologists in Illinois too,

Dr. Chan was unaware that Mobile/Chicago, its trademark, or its website existed until he received a cease-and-desist letter from its lawyer in December 2008. There is no evidence that anyone else associated with Mobile/Houston has any relevant contacts with Illinois.

The district court dismissed Mobile/Chicago's suit for lack of personal jurisdiction. The court pointed out that Mobile/Houston lacks any meaningful contacts with Illinois and that its website, though bearing a name similar to Mobile/Chicago's, is not directed at Illinois in any way. The assertion that Dr. Chan, sitting in Houston, knew about Mobile/Chicago and intended to do it harm in Illinois, was "entirely unsupported" and an "empty conclusion."

II. *Waiver*

Mobile/Chicago begins with the bold argument that Mobile/Houston waived its right to argue lack of personal jurisdiction when it asked for a continuance of the preliminary injunction hearing and an expedited discovery schedule. We disagree.

Mobile/Chicago filed its lawsuit in the Northern District of Illinois on February 13, 2009 and requested a preliminary injunction to stop Mobile/Houston's use of its domain name. The court scheduled a hearing for March 6, 2009. On March 3rd, Mobile/Houston's counsel filed a motion to continue the preliminary injunction hearing, which Dr. Chan could not attend because he was scheduled to see patients in Texas that day. The motion also requested expedited discovery to prepare

for the hearing. Thirteen days later, on March 16, 2009, Mobile/Houston filed its Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction.

These preliminary actions do not come close to what is required for waiver or forfeiture. To waive or forfeit a personal jurisdiction defense, a defendant must give a plaintiff a reasonable expectation that it will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking. See, *e.g.*, *American Patriot Ins. Agency, Inc. v. Mutual Risk Management, Ltd.*, 364 F.3d 884, 887-88 (7th Cir. 2004) (Rule 12(b)(3) defense of improper venue was not waived or forfeited when defendant engaged in preliminary pretrial litigation activity; plaintiff should have anticipated defendant's objection, and defendant was not "testing the wind" or causing "wasted motion by the court"). Faced with an impending preliminary injunction hearing and unable to produce its key witness, Mobile/Houston had the right to ask for more time to learn who was suing it and why without losing its right to object to personal jurisdiction. The district court did not err in proceeding to the substance of the personal jurisdiction defense.

III. *Specific Jurisdiction*

In a federal question case such as this one, a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant. *Omni Capital International, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S.

No. 09-2658

97, 104-05 (1987) (federal court should look to a federal statute or to the state long-arm statute to determine defendant's amenability to service, which is "a prerequisite to its exercise of personal jurisdiction"). The federal statutes on which Mobile/Chicago is suing do not authorize nationwide service. Mobile/Houston is amenable to service (and hence subject to personal jurisdiction) only if it could be served in Illinois under Illinois law. Illinois's long-arm statute permits the exercise of personal jurisdiction if it would be allowed under either the Illinois Constitution or the United States Constitution. See 735 Ill. Comp. Stat. 5/2-209(c). We have held that there is no operative difference between these two constitutional limits. See *Tamburo v. Dworkin*, 601 F.3d 693, 700 (7th Cir. 2010); *Hyatt International Corp. v. Coco*, 302 F.3d 707, 715 (7th Cir. 2002). We proceed to the question whether the exercise of personal jurisdiction would violate federal due process.

Under the Supreme Court's well-established interpretation of the Fourteenth Amendment's due process clause, a defendant is subject to personal jurisdiction in a particular state only if the defendant had "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). It is unconstitutional to force a defendant to appear in a distant court unless it has done something that should make it "reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985), quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 295 (1980).

The Court has also framed the constitutional inquiry in terms of whether the defendant "purposefully avails itself" of the benefits and protections of conducting activities in the forum state. See *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

Personal jurisdiction can be general or specific, depending on the extent of the defendant's contacts. See *Tamburo*, 601 F.3d at 701. Mobile/Chicago does not assert, and the evidence does not support, a claim of general jurisdiction over Mobile/Houston in Illinois, so Mobile/Chicago must show that Illinois can exercise specific jurisdiction over Mobile/Houston for this particular claim. Specific personal jurisdiction is appropriate when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities. See, *e.g.*, *Burger King*, 471 U.S. at 472.

Mobile/Houston did not purposefully direct its activities at Illinois. It has formed no contracts in Illinois and has had no physical presence there. Mobile/Chicago points to the fact that Dr. Chan is a member of two professional associations headquartered in Illinois, but those are the kinds of fortuitous contacts that the Supreme Court has repeatedly held do not support personal jurisdiction where the contacts bear no relationship to the lawsuit. See, *e.g.*, *Burger King*, 471 U.S. at 475; *World-Wide Volkswagen*, 444 U.S. at 295. Mobile/Houston simply has nothing to do with the state where it is being called to appear in court.

But Mobile/Chicago contends that Mobile/Houston has done two things in Texas to subject itself to suit in Illinois. First, Mobile/Houston has maintained a

website with a name similar to Mobile/Chicago's trademark, with constructive notice of that trademark thanks to Mobile/Chicago's federal registration. Second, after receiving the cease-and-desist letter, Mobile/Houston has maintained its website with actual notice of Mobile/Chicago's identity, location, and ownership of a similar mark. From these facts, Mobile/Chicago argues, we should infer that Mobile/Houston intended to injure Mobile/Chicago in Illinois, and from that intent we should find the contacts needed to satisfy due process. This argument is not persuasive.

The Supreme Court has held that constitutionally sufficient contacts can be imputed to a defendant if the defendant is accused of committing an intentional tort by actions that are "expressly aimed" at the forum state. See *Calder v. Jones*, 465 U.S. 783, 789-90 (1984). The outcome in *Calder* was tied closely to its facts: Florida citizens who lacked sufficient contacts with California were nonetheless subject to personal jurisdiction in California because they published an allegedly libelous story about a California resident where the sources were all in California and "the brunt of the harm" was suffered by the plaintiff in California. *Id.* The Supreme Court emphasized that the defendants' actions were not the product of "mere untargeted negligence," *id.* at 789, but rather were "calculated to cause injury to respondent in California," *id.* at 791.[1]

---

[1] In the past, the reasoning in *Calder* has been called the "effects test." We believe the phrase "express aiming test"—adopted

(continued...)

As we recognized in *Tamburo*, 601 F.3d at 704, this court's application of *Calder* has not been entirely consistent. In *Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985), we rejected the contention that *Calder* meant "any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." *Id.* at 394. *Calder*'s "express aiming" requirement, we held, was merely one means of satisfying the traditional due process standard set out in *International Shoe* and its familiar progeny, not an independent path to jurisdiction that allowed a defendant to avoid "minimum contacts" altogether. *Id.* at 395; accord, *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780-81 (1984) ("The victim of a libel, like the victim of any other tort, may choose to bring suit in any forum with which the defendant has certain minimum contacts . . . such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.") (citation and quotation marks omitted).

Our decision in *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 411-12

---

[1] (...continued)

by this court in *Tamburo*, 601 F.3d at 697—is more faithful to *Calder*. It properly focuses attention on whether the defendant intentionally aimed its conduct at the forum state, rather than on the possibly incidental and constitutionally irrelevant effects of that conduct on the plaintiff.

(7th Cir. 1994), suggested a somewhat broader test, but did not actually adopt it. There we suggested that the state in which the alleged victim of a tort suffers the injury of that tort may automatically obtain personal jurisdiction over the defendant. We went on, however, to hold that we "need not rest on so austere a conception of the basis of personal jurisdiction." The defendant—a Canadian Football League team in Baltimore—had planned to actually "enter" the forum state of Indiana via national broadcasts of its games, and the combination of that planned entry and the expected harm in Indiana was enough to support personal jurisdiction. *Id.* at 412.

*Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997), appeared to extend the reach of *Calder* even further. We wrote in *Janmark* that "there can be no serious doubt after *Calder v. Jones* that the state in which the victim of a tort suffers the injury may entertain a suit against the accused tortfeasor." *Janmark*, 132 F.3d at 1202, citing *Indianapolis Colts*, 34 F.3d at 411-12. In *Janmark*, there was no "entry," actual or imputed, into the forum state. Moreover, we did not discuss whether the defendants in that case had expressly aimed their conduct at the forum state, or even whether the defendants knew the plaintiff was located there or had suffered harm there.

We view *Wallace* as a correct statement of the standard set down by the Supreme Court. As in *Tamburo*, we do not read *Indianapolis Colts* or *Janmark* to conflict with *Calder*, which made clear that a defendant's intentional tort creates the requisite minimum contacts with a state

only when the defendant expressly aims its actions at the state with the knowledge that they would cause harm to the plaintiff there. *Tamburo*, 601 F.3d at 703. One can certainly read *Indianapolis Colts* and *Janmark* to arrive at that conclusion by another road, see *Tamburo*, 601 F.3d at 705-06, but "express aiming" remains the crucial requirement when a plaintiff seeks to establish personal jurisdiction under *Calder*.

Mobile/Chicago's evidence that Mobile/Houston took express aim at Illinois is inadequate. Mobile/ Chicago first contends that we should infer express aiming at Illinois from the fact that Mobile/Houston operates a website whose domain name is similar to Mobile/Chicago's trademark. We disagree. A plaintiff cannot satisfy the *Calder* standard simply by showing that the defendant maintained a website accessible to residents of the forum state and alleging that the defendant caused harm through that website. See, *e.g.*, *Panavision International, L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) ("We agree that simply registering someone else's trademark as a domain name and posting a web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another."); *Young v. New Haven Advocate*, 315 F.3d 256, 264 (4th Cir. 2002) (no express aiming where the defendant newspapers' only contacts with the forum state were through websites aimed at an out-of-state audience).

Still less does Mobile/Houston's website create constitutionally sufficient contacts with Illinois in the absence of express aiming. A defendant's deliberate and

continuous exploitation of the market in a forum state, accomplished through its website as well as through other contacts with the state, can be sufficient to establish specific personal jurisdiction. See, *e.g.*, *uBID, Inc. v. The GoDaddy Group, Inc.*, No. 09-3927 (7th Cir. Sept. 29, 2010). Mobile/Houston's relationship with Illinois stands in stark contrast to such cases. Dr. Chan is not licensed to practice medicine outside of Texas. His website does not contain much, but it does contain a Houston-area phone number, an e-mail address, and an invitation to doctors in the "greater Houston area" to contract for his services. If a doctor in Chicago stumbled upon Dr. Chan's website and called for an appointment, their conversation would be very short.

Trying a second path to show "express aiming," Mobile/ Chicago argues that its federal trademark registration gave Mobile/Houston "constructive notice" that it was infringing Mobile/Chicago's trademark and could be called to court in Illinois. This argument misunderstands the purpose of federal registration. The federal trademark statute on which Mobile/Chicago sued does not authorize nationwide service of process. See, *e.g.*, *Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004). The statute provides that registration serves as "constructive notice of the registrant's claim of ownership," 15 U.S.C. § 1072, but that provision is intended to protect against users of the registrant's trademark who might otherwise raise a defense of innocent misappropriation. See *In re International Flavors & Fragrances, Inc.*, 183 F.3d 1361, 1367 (Fed. Cir. 1999). It does not

follow from the constructive notice statute that any alleged infringer, despite its lack of any other contacts with the forum state, may henceforth be sued in that state. In other words, trademark owners cannot create nationwide service of process by this theory of constructive notice.

Finally, Mobile/Chicago points out that Mobile/Houston also had actual notice of Mobile/Chicago's trademark from the moment it received Mobile/Chicago's cease-and-desist letter. From that time forward, Mobile/Chicago argues, Mobile/Houston was intentionally directing its tortious activities at Illinois in the same way that the defendants in *Calder* intentionally directed their tortious activities at California. This argument finds no support in the case law. The cases that have found express aiming have all relied on evidence beyond the plaintiff's mere residence in the forum state. See, *e.g.*, *Calder*, 465 U.S. at 789-90 (defendants drew allegedly libelous story from forum state sources and newspaper had its largest circulation in the forum state); *Tamburo*, 601 F.3d at 697 (defendants listed plaintiff's forum state address online and encouraged readers to harass him); *Panavision*, 141 F.3d at 1319, 1322 (defendant's intent to harm plaintiff in forum state could be inferred from his broader scheme of registering prominent trademarks as domain names for the purpose of extorting money from the marks' owners). Here, by contrast, there is only the cease-and-desist letter. To find express aiming based solely on the defendant's receipt of that letter would make any defendant accused of an intentional tort subject to personal jurisdiction in the plaintiff's home state as soon

as the defendant learns what that state is. *Calder* requires more.

AFFIRMED.