NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted November 16, 2011[*]
Decided November 23, 2011

**Before**

JOHN L. COFFEY, *Circuit Judge*

JOEL M. FLAUM, *Circuit Judge*

KENNETH F. RIPPLE, *Circuit Judge*

No. 11-1950

| | |
|---|---|
| CASSANDRA D. COLO'N, | Appeal from the United States District |
| *Plaintiff-Appellant*, | Court for the Southern District of Indiana, |
| | New Albany Division. |
| *v.* | No. 4:08-cv-00026-TWP-DML |
| MARA B. AKIL, et al., | Tanya Walton Pratt, |
| *Defendants-Appellees*. | *Judge.* |

**O R D E R**

Cassandra Colo'n, an aspiring television writer living in Indiana, filed a copyright action in the Southern District of Indiana alleging that a television episode produced by the defendants infringed the copyright in her unpublished script in violation of 17 U.S.C. § 501. The district court dismissed her suit against five of the

---

[*]After examining the briefs and record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and record. *See* FED. R. APP. P. 34(a)(2)(C).

defendants for lack of personal jurisdiction and granted a default judgment against the last. We affirm.

Colo'n alleged in her complaint that defendant Allison Jordan, an agent, asked her to write an episode of the television show *The Game*. Colo'n wrote a script titled *The Game: Pass Interference*, which Colo'n sent on to Jordan with the understanding that Jordan would forward it to Mara Akil, a television producer. Colo'n never heard back from Jordan, but some time later she saw an episode of *The Game* that resembled her script. Colo'n then obtained a certificate of copyright registration for *The Game: Pass Interference* and brought this suit against Jordan and Akil, along with other entities involved in producing *The Game*—Akil Productions, Inc. (formerly named Happy Camper Productions), Kelsey Grammar, Grammnet Productions, and CBS Studios, Inc.

CBS Studios first moved to dismiss the complaint, asserting that it was not subject to general or specific personal jurisdiction in Indiana. CBS Studios explained that it is a production company primarily located in New York, incorporated in Delaware, and a subsidiary of CBS Corporation. It does not conduct business in Indiana and does not broadcast television anywhere; it produced episodes of *The Game* in California and licensed them to the CW television network for broadcast. After CBS Studios filed its motion, Colo'n sought discovery regarding CBS Studios' presence in Indiana.

Then-District Judge Hamilton dismissed CBS Studios from the case, determining that the company had no meaningful contacts with Indiana and no contact with Indiana related to *The Game*. In analyzing whether CBS Studios was subject to general jurisdiction, the judge explained that Colo'n did not allege that CBS Studios had any business contacts with Indiana, let alone continuous and systematic contacts with Indiana. The court also declined to impute to CBS Studios the contacts of its parent company, CBS Corporation (which does have more extensive, nationwide contacts as alleged by Colo'n); the two companies are separate because they observe corporate formalities, and CBS Corporation does not exercise day-to-day management over CBS Studios. The judge determined that the court had no specific jurisdiction over CBS Studios; CBS Studios had not availed itself of the privileges of conducting business in Indiana because no production of *The Game* took place there. The judge also denied Colo'n's request for discovery because she had not established a prima facie case that CBS Studios was subject to personal jurisdiction.

After the remaining defendants (except Jordan) moved to dismiss the complaint on grounds that they too were not subject to jurisdiction in Indiana, Judge Hamilton dismissed them from the case. He did not find general jurisdiction based on these defendants' association with CBS Studios, noting that CBS Studios was previously dismissed from the case because its contacts were insufficient to subject it to personal jurisdiction in Indiana. The judge also found that Colo'n could not satisfy the "purposeful availment" requirement of specific jurisdiction; he noted that none of the defendants had heard of Colo'n before her lawsuit and thus the court could not base jurisdiction on unsupported allegations of their intentional copyright infringement.

Colo'n then sought a default judgment against Jordan, the lone defendant who never responded to her complaint. District Judge Pratt (to whom the case had been reassigned) held a hearing to assess the question of damages. Judge Pratt ultimately determined that Colo'n adequately stated a claim of copyright infringement against Jordan, but could not recover damages because (1) Colo'n had waived her request for actual damages (and even if she had not, she had never been paid for any of her scripts and had no contract of any kind with Jordan), and (2) the Copyright Act, 17 U.S.C. § 412, barred statutory damages because Colo'n waited for more than three months after the airing of the episode before copyrighting her script.

Colo'n then sought reconsideration so that she could conduct discovery on damages, but Judge Pratt denied the request because Colo'n had ample time before the hearing to seek discovery (the case had been pending more than four years).

On appeal, Colo'n first argues that her allegations and supporting evidence are enough to show that the defendants all had sufficient minimum contacts with Indiana. Colo'n maintains that the district court should have found jurisdiction based on the defendants' substantial contacts with Indiana through their affiliates—an apparent reference to CBS Corporation, not CBS Studios.

We agree with Judge Hamilton's conclusion that Colo'n did not establish jurisdiction over the defendants in Indiana. Personal jurisdiction under Indiana law and the Due Process Clause may be either general or specific. Fed. R. Civ. P. 4(k)(1)(A); *see also* Indiana Rule of Trial Procedure 4.4(A); *Manez v. Bridgestone Firestone N. Am. Tire, LLC*, 533 F.3d 578, 587 (7th Cir. 2008). Judge Hamilton properly determined that Colo'n showed no evidence of general jurisdiction because she did not show that the defendants maintained continuous and systematic business contacts with Indiana. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011)

(reaffirming that for foreign corporations to be subject to general jurisdiction, their contacts with the forum state must be "so continuous and systematic as to render them essentially at home in the forum State"); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415–16 (1984); *uBID, Inc. v. GoDaddy Group, Inc.*, 623 F.3d 421, 425–26 (7th Cir. 2010). Nor did she show specific jurisdiction, as Judge Hamilton explained, by proving that the defendants availed themselves of the privileges of conducting business in Indiana. *See J. McIntyre Mach., Ltd. v. Nicastro*, 131 S. Ct. 2780, 2789 (2011) (explaining that purposeful availment hinges on "whether a defendant has followed a course of conduct directed at the society or economy existing within the jurisdiction of a given sovereign"); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985); *Tamburo v. Dworkin*, 601 F.3d 693, 702 (7th Cir. 2010). Colo'n continues to argue that the presence of CBS Corporation in Indiana conferred jurisdiction over CBS Studios, but her argument fails because personal jurisdiction cannot be premised on corporate affiliation alone when, as Judge Hamilton found, CBS Studios and CBS Corporation exist as separate entities. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 788 n.17 (7th Cir. 2003); *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 943–45 (7th Cir. 2000).

Colo'n also asserts that the district court should have found that all of the defendants were subject to jurisdiction in Indiana because they aired her episode of *The Game* in Indiana. She relies on the "express aiming" theory, which bases jurisdiction on a defendant's conduct intentionally aimed at the forum state. *See Calder v. Jones*, 465 U.S. 783, 788–91 (1984); *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440, 445 n.1 (7th Cir. 2010). But Colo'n failed to show that the defendants intentionally aimed their conduct at Indiana because she submitted no evidence that any of the defendants had anything to do with the Indiana broadcast of *The Game*. And as the district court found, Colo'n also did not show that the defendants acted "with the knowledge that they would cause harm to the plaintiff there," *Mobile*, 623 F.3d at 445, since the evidence was undisputed that none of the defendants knew of her or her script before Colo'n filed her suit.

Colo'n next argues that Judge Hamilton erroneously prohibited her from conducting discovery about personal jurisdiction before granting the motions to dismiss. But Judge Hamilton correctly determined that Colo'n needed to establish at least a colorable showing of personal jurisdiction before being allowed discovery, *see Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 876–77 (7th Cir. 2006), and as we have explained, she had not. Moreover, Colo'n sought extensive information about the defendants' business plans, employment practices, and

marketing campaigns—a request that would have been unduly burdensome before Colo'n had established the existence of personal jurisdiction over them. *See GCIU-Emp'r Ret. Fund*, 565 F.3d at 1026; *Reimer Express*, 230 F.3d at 947.

Colo'n lastly argues that Judge Pratt should have granted her motion for reconsideration and permitted her to conduct discovery into actual damages against Jordan. But Colo'n raised this issue for the first time in a motion for reconsideration, so the judge did not abuse her discretion in denying it.

AFFIRMED