In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 21-2909

NBA PROPERTIES, INCORPORATED, et al.,

*Plaintiffs-Appellees*,

*v.*

HANWJH,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:20-cv-07543 — **John F. Kness**, *Judge*.

———————————

ARGUED APRIL 7, 2022 — DECIDED AUGUST 16, 2022

———————————

Before RIPPLE and SCUDDER, *Circuit Judges*.[*]

RIPPLE, *Circuit Judge*. The plaintiffs in the underlying litigation are professional or collegiate sports associations who

———————————

[*] Circuit Judge Kanne died on June 16, 2022, and did not participate in the decision of this case, which is being resolved under 28 U.S.C. § 46(d) by a quorum of the panel.

own, or license, trademarks related to their respective sports. The plaintiffs filed this action under the Lanham Act, 15 U.S.C. § 1051, et seq., against a list of defendants listed in Schedule A of the complaint. In the complaint, NBA Properties, Inc. alleged that HANWJH, a China-based online retailer, infringed NBA Properties' trademarks by selling counterfeit products in its online stores. After the deadline to answer expired, HANWJH moved to dismiss the complaint for lack of personal jurisdiction. The district court denied the motion and entered a default under Federal Rule of Civil Procedure 55(a). The district court instructed the parties to file any objections to the motion for default judgment. After the deadline expired without objection, the district court entered a final judgment. HANWJH timely appealed. For the reasons set forth in this opinion, we affirm the judgment of the district court.

## I

### A.

NBA Properties is the owner and exclusive licensee of the trademarks of the National Basketball Association ("NBA") and NBA teams. HANWJH sells products allegedly infringing on the NBA trademarks via Amazon.com. NBA Properties filed an affidavit from its investigator asserting that HANWJH sold 205 infringing products, available for purchase in Illinois, on its Amazon site. HANWJH offered forty-one different basketball shorts in five different size options.

On September 16, 2020, an investigator for NBA Properties accessed HANWJH's online Amazon store and purchased a pair of shorts. In placing the order, the investigator designated an address in Illinois as the delivery destination. The

sale went through, and the product was delivered to the Illinois address on October 6, 2020. NBA Properties has not alleged any other contacts between HANWJH and Illinois other than the single sale to its investigator and the accessibility of HANWJH's online store from Illinois. In an affidavit filed in the district court, HANWJH maintained that it had never sold any other product to any consumer in Illinois nor had it any "offices, employees," "real or personal property," "bank accounts," or any other commercial dealings with Illinois.[1]

## B.

NBA Properties filed its complaint on December 18, 2020, consisting of two counts: 1) trademark infringement and counterfeiting, in violation of 15 U.S.C. § 1114; 2) false designation of origin, in violation of 15 U.S.C. § 1125(a). The complaint alleges that the "Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit Products to unknowing consumers."[2] Count I alleges that "Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing and advertising products using counterfeit or infringing reproductions of one or more of Plaintiffs' Trademarks without Plaintiffs' permission or consent."[3] Count II alleges that "[b]y using one or more of Plaintiffs' Trademarks on the Counterfeit Products, Defendants create a false designation of origin

---

[1] R.56-1 ¶ 6–17.

[2] R.1 ¶ 4.

[3] *Id.* ¶ 80.

and a misleading representation of fact as to the origin and sponsorship of the Counterfeit Products."[4]

NBA Properties sought and received a temporary restraining order and preliminary injunction, including a temporary asset restraint on HANWJH's bank account. It then moved for a default under Rule 55(a), positing that, despite having been served, HANWJH had not answered or otherwise defended the suit. Moreover, it added that a default judgment was proper under Rule 55(b)(2) because, although more than twenty-one days had passed since service upon HANWJH, *see* Rule 12(a)(1)(A)(i), HANWJH had not filed an answer or responsive pleading.

HANWJH next moved to dismiss and to lift the injunction, arguing that the court lacked personal jurisdiction over it because it did not expressly aim any conduct at Illinois. It contended that it lacked any connections with Illinois other than the "sham" transaction initiated by NBA Properties.[5] First, it argued that operating a website alone is not enough to establish that it has expressly aimed its commercial activity at Illinois. Second, it submitted that a single transaction initiated by the plaintiff cannot constitute a sufficient basis for jurisdiction. Third, it reasoned that, even if exercising jurisdiction over it were otherwise appropriate, doing so would offend the traditional notions of fair play and substantial justice because Illinois had very little interest in resolving the matter, the burden on HANWJH for defending the litigation in

---

[4] *Id.* ¶ 87.

[5] R.56 at 1.

Illinois would be great, and Illinois courts provided no "effi-
ciencies in resolving this matter."[6]

The district court denied HANWJH's motion to dismiss
and simultaneously entered a default. In its memorandum
opinion, the district court set forth a three-part standard for
analyzing specific personal jurisdiction:

> First, the defendant must have "minimum con-
> tacts with the forum state." To determine
> whether the defendant has such contacts, the
> court must ask whether "the defendant should
> reasonably anticipate being haled into court in
> the forum State, because the defendant has pur-
> posefully availed itself of the privilege of con-
> ducting activities there." Second, the plaintiff's
> claims must "arise out of" the defendant's con-
> tacts with the forum. Third, and finally, mainte-
> nance of the suit must not "offend traditional
> notions of fair play and substantial justice."[7]

The court concluded that these requirements were met as to
HANWJH.

The district court acknowledged that "specific personal ju-
risdiction over an online retailer is not established merely be-
cause the retailer's website is available in the forum" but ra-
ther it is necessary that the retailer "'st[and] ready and willing
to do business with' residents of the forum and then

---

[6] *Id.* at 8.

[7] R.58 at 4 (citations omitted).

'knowingly do … business with' those residents."[8] This test was satisfied, in the district court's view, by the fact that HANWJH "admit[ted] that it both offered to ship and in fact shipped products to Illinois."[9] Relying on our opinions in *Curry v. Revolution Laboratories, LLC*, 949 F.3d 385 (7th Cir. 2020) and *Illinois v. Hemi Group LLC*, 622 F.3d 754 (7th Cir. 2010), the district court observed that "minimum contacts [can be] formed even though a defendant 's[old] its products only online through its website and third-party websites'" in situations where the defendant "(1) included the forum in the 'ship-to' options from which the customer had to choose; (2) sent a customer an email confirming a shipping address in the forum; and (3) shipped product to an address in the forum."[10] The district court did not view the lack of a confirmation email as dispositive and held that jurisdiction was proper over HANWJH.

The district court then rejected HANWJH's arguments that *be2 LLC v. Ivanov*, 642 F.3d 555 (7th Cir. 2011) and *Advanced Tactical Ordnance Systems, LLC v. Real Action Paintball, Inc.*, 751 F.3d 796 (7th Cir. 2014), required the action to be dismissed for lack of personal jurisdiction. The district court determined these cases to be materially distinguishable because neither involved sales of infringing products to the forum state. The district court also rejected HANWJH's contention

---

[8] *Id.* at 4–5 (quoting *Illinois v. Hemi Grp. LLC*, 622 F.3d 754, 758 (7th Cir. 2010)).

[9] *Id.* at 5.

[10] *Id.* (second alteration in original) (quoting *Curry v. Revolution Lab'ys, LLC*, 949 F.3d 385, 399 (7th Cir. 2020)).

that our opinion in *Hemi*, 622 F.3d 754, should not apply.
HANWJH had urged that "because the transactions in Illinois
in this case were exclusively the product of 'entrapment and
enticement' by Plaintiffs, *Hemi* should not apply."[11] The dis-
trict court disagreed.

> *Hemi*'s reasoning is on point. In that case, the de-
> fendant had a website that offered Illinois as a
> "ship-to" forum and in fact shipped products to
> Illinois. As this Court sees things, *Hemi* did not
> impose any bar to evidence generated from a
> plaintiff's pretextual purchase of an infringing
> product; and Defendant does not offer any au-
> thority establishing such a rule. In the absence
> of contrary authority, the Court finds that Plain-
> tiffs' reasons for purchasing the allegedly in-
> fringing material provided by products is not
> relevant to the personal jurisdiction analysis.[12]

Finally, the district court also rejected HANWJH's conten-
tion that "exercising personal jurisdiction would 'offend tra-
ditional notions of fair play and substantial justice.'"[13] It ex-
plained that HANWJH had offered no support for this argu-
ment. It added that it was hardly unfair to subject HANWJH
to jurisdiction because HANWJH "willingly shipped an alleg-
edly infringing product to this forum."[14]

---

[11] *Id.* at 7 (quoting R.56 at 6).

[12] *Id.* (citing *Hemi*, 622 F.3d at 758).

[13] *Id.* (quoting R.56 at 8).

[14] *Id.* at 8.

Following the entry of the default, the district court ordered that any objections to the motion for default judgment be filed no later than July 26, 2021. On July 26, HANWJH appealed the denial of the motion to dismiss. After we ordered supplemental briefing on the issue of appellate jurisdiction, HANWJH voluntarily dismissed its appeal. Because HANWJH did not object to the motion for default judgment, the district court then entered a final judgment on September 20, 2021. HANWJH timely appealed that order.

## II

### A.

We review a district court's determination of personal jurisdiction de novo. *See Curry*, 949 F.3d at 392. We "take the plaintiff's asserted facts as true and resolve any factual disputes in its favor." *uBID, Inc. v. GoDaddy Grp., Inc.*, 623 F.3d 421, 423–24 (7th Cir. 2010). When a defendant challenges personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), however, "the plaintiff bears the burden of demonstrating the existence of jurisdiction." *Purdue Rsch. Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). "Where, as here, the district court ruled on the defendant's motion to dismiss 'without the benefit of an evidentiary hearing, the plaintiff bears only the burden of making a prima facie case for personal jurisdiction.'" *Curry*, 949 F.3d at 392–93 (quoting *uBID, Inc.*, 623 F.3d at 423). The district court may consider affidavits on the issue of personal jurisdiction; both parties' affidavits are accepted as true, and where they conflict, the plaintiff is entitled to resolution in its favor. *Id.* at 393.

**B.**

We now turn to the issue of specific personal jurisdiction. "In a case involving federal question jurisdiction, 'a federal court has personal jurisdiction over the defendant if either federal law or the law of the state in which the court sits authorizes service of process to that defendant.'" *Id.* (quoting *Mobile Anesthesiologists Chi., LLC v. Anesthesia Assocs. of Hous. Metroplex, P.A.*, 623 F.3d 440, 443 (7th Cir. 2010)). "Because the Lanham Act does not have a special federal rule for personal jurisdiction, … we look to the law of the forum for the governing rule." *Advanced Tactical*, 751 F.3d at 800; *see also* Fed. R. Civ. P. 4(k)(1). The Illinois long-arm statute provides that "[a] court may also exercise jurisdiction on any other basis now or hereafter permitted by the Illinois Constitution and the Constitution of the United States." 735 ILCS 5/2-209(c).[15]

"The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471–72 (1985) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)). To be subject to specific personal jurisdiction in a forum state, the defendant must have "purposefully directed" its activities to the forum state, and the litigation must

---

[15] We have been unable to identify any difference between the state and federal standards. *See Matlin v. Spin Master Corp.*, 921 F.3d 701, 705 (7th Cir. 2019). We have no reason to disturb this settled consensus; in cases where "neither party … urges that the Illinois due process analysis differs, we only consider the requirements of federal due process." *Id.*; *see also Rios v. Bayer Corp.*, 178 N.E.3d 1088, 1094 (Ill. 2020) (same); *Russell v. SNFA*, 987 N.E.2d 778, 784–86 (Ill. 2013) (detailing the development of the doctrine).

relate to those activities. *Id.* at 472 (quoting *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 774 (1984)).

Over the years, the Supreme Court has refined the doctrine of personal jurisdiction as the practicalities of commercial activity have changed in response to technological developments. Initially, the "long-standing territorial-based jurisdiction test" held that an "adjudicating court's jurisdiction over persons is established only when the persons have some territorial presence, actual or constructive, in the forum." *Curry*, 949 F.3d at 393–94 (citing *Pennoyer v. Neff*, 95 U.S. 714 (1877)). The "advent of automobiles," along with "the realities of interstate corporate activities," "required … moderation of the territorial limits on jurisdictional power." *Shaffer v. Heitner*, 433 U.S. 186, 202 (1977). That moderation came in *International Shoe*, in which the Court emphasized the modern requirement that a defendant "have certain minimum contacts with [the forum] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

In the decades following *International Shoe*, the Court periodically provided further elucidation of the "minimum contacts" criterion and the cornerstone standard of "traditional notions of fair play and substantial justice." As we noted in *Curry*, the Supreme Court has confirmed that these more recent cases were not intended to alter the basic approach to specific personal jurisdiction but to refine our understanding, and application, of it. 949 F.3d at 396. We previously have examined in some depth that jurisprudential journey in *Curry*, *id.* at 395–98, and need not walk every step of that road again. It is sufficient that we stress the resulting guideposts of that

journey as they pertain to the case before us. First, in examining "minimum contacts," we must focus on the *defendant's* own contacts with the state, not the plaintiff's. *Walden v. Fiore*, 571 U.S. 277, 284 (2014). The defendant's contacts must be with the forum state, not just with individuals within the state. *See id.* at 285. The defendant's contacts with the state must demonstrate that the defendant purposively availed itself of the laws of that jurisdiction by availing itself of the privilege of doing business in the state or by purposively directing activities at the state. *See Lexington Ins. Co. v. Hotai Ins. Co.*, 938 F.3d 874, 878 (7th Cir. 2019).[16]

This focus on the contacts among the *defendant*, the forum, and the litigation "protects the defendant against the burdens of litigating in a distant or inconvenient forum." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Achievement of this goal is the primary purpose of the analysis. It is not, however, the exclusive consideration that a court may consider. A court may also give some weight to the "forum State's interest in adjudicating the dispute," "the plaintiff's interest in securing convenient and effective relief," and the shared interest of the interstate system in obtaining an efficient and effective relief that promotes shared social policies.

---

[16] Most recently, in *Ford Motor Co. v. Montana Eighth Judicial District Court*, the Supreme Court considered Ford's contention that jurisdiction over it in Montana was improper where Ford's contacts with the forum did not directly cause the harm. 141 S. Ct. 1017, 1023 (2021). The Supreme Court rejected this narrow view. "[S]pecific jurisdiction attaches in cases identical to the ones here—when a company like Ford serves a market for a product in the forum State and the product malfunctions there." *Id.* at 1027.

*Id.* But, again, we must remember that the "minimum con-
tacts" analysis is aimed principally at protecting "the liberty
of the nonresident defendant—not the convenience of plain-
tiffs … and the forum state." *Walden*, 571 U.S. at 284.

## C.

We have applied these principles to online retailers. In
*uBID, Inc.*, 623 F.3d at 424, 428, we reversed a dismissal for
want of personal jurisdiction where defendant GoDaddy (the
operator of the website of the same name) directed an adver-
tising campaign at the entire Nation, including at the forum
state, and generated significant revenue from forum custom-
ers. Relying on the Supreme Court's decision in *Keeton*,
465 U.S. 770, we held that "GoDaddy has thoroughly, delib-
erately, and successfully exploited the Illinois market"
through its use of sales and advertisements to Illinois (among
the other forty-nine states). *uBID, Inc.*, 623 F.3d at 427. Go-
Daddy contended "that its sales to Illinois residents are auto-
mated transactions unilaterally initiated by those residents,"
but we disagreed. *Id.* at 428. We explained that

> GoDaddy tells us that its customers enter into
> most transactions without any human action on
> GoDaddy's end. But of course the customers
> who buy domain names from GoDaddy are not
> simply typing their credit card numbers into a
> web form and hoping they get something in re-
> turn. GoDaddy itself set the system up this way.
> It cannot now point to its hundreds of thou-
> sands of customers in Illinois and tell us, "It was
> all their idea."

*Id.*

Then in *Hemi*, 622 F.3d 754, we affirmed the district court's holding that Internet sales to the forum were sufficient to establish personal jurisdiction over an out-of-state online cigarette retailer, Hemi. Hemi sold discount cigarettes through many websites. It indicated on its websites that it would sell cigarettes to any state in the Republic, save New York (due to ongoing litigation in that state). *Id.* at 755–56. Over the course of a three year-long investigation by the Illinois Department of Revenue, a single special senior agent purchased over 300 packs of cigarettes from Hemi and had them shipped to Illinois. *Id.* at 755. The only connections alleged between Hemi and Illinois were these sales. We held that Hemi's "contacts with Illinois were sufficient to satisfy due process." *Id.* at 757. This holding was rooted in two key facts. First, "Hemi expressly elected to do business with the residents of forty-nine states. … Hemi stood ready and willing to do business with Illinois residents." *Id.* at 758. Second, "the fact that Hemi excluded New York residents from its customer pool shows … that Hemi knew that conducting business with residents of a particular state could subject it to jurisdiction there." *Id.*

We also have held jurisdiction proper where a defendant's website offered the forum state as a "ship-to" option, the defendant sent a follow-up email confirming orders and shipping addresses, and the defendant sold and shipped products to over 700 residents in the forum. *Curry*, 949 F.3d at 399. These contacts were sufficient, we explained, because "[t]here is no per se requirement that the defendant especially target the forum in its business activity; it is sufficient that the defendant reasonably could foresee that its product would be sold in the forum." *Id.* If the defendant exploits the forum market, it is subject to the jurisdiction of the forum. *Id.* In

*Curry* we explained that allowing customers to order prod-
ucts from a website to the forum, and then carrying out that
order, can form the basis of personal jurisdiction. *Id.* at 399–
400.

In *Matlin v. Spin Master Corp.*, 921 F.3d 701 (7th Cir. 2019),
however, we encountered a case that, when all circumstances
were considered, exceeded established constitutional limita-
tions on personal jurisdiction.[17] In that case, two inventors
sued their former company in Illinois (and its assignee) for
royalties from their products. *Id.* at 703–04. The defendants
moved to dismiss under Rule 12(b)(2). In response, the inven-
tors' "counsel submitted an online purchase receipt from [the
defendants]' website and a declaration stating that he pur-
chased and received a single patented product in Illinois." *Id.*
at 704. We distinguished *Hemi* and found jurisdiction lacking
for three key reasons:

> The first is the scale of contact with Illinois. …
> [This case involved] a single incident conjured
> up by the plaintiffs' attorney for the exclusive
> purpose of establishing personal jurisdiction
> over the defendants.
>
> …
>
> Second, the relationship between the defend-
> ants' conduct and the State differs significantly.
> … [T]he plaintiffs bring claims with an attenu-
> ated relationship to Illinois and any sales that
> occurred there. In other words, this case is not
> "a suit arising out of or related to the defend-
> ant[s'] contacts with the forum." … [T]his is not

---

[17] For *Matlin*'s application to the case at hand, see *infra* pp. 18–19.

> the type of case where the defendants sold and
> shipped a defective product into Illinois that in-
> jured residents there.
>
> …
>
> [Third, the plaintiffs] attempted to salvage per-
> sonal jurisdiction—*after* the defendants moved
> to dismiss—by luring them into shipping a
> product into Illinois. Because specific personal
> jurisdiction derives from the plaintiffs' relevant
> contacts with the forum, we cannot allow plain-
> tiffs to base jurisdiction on a contact that did not
> exist at the time they filed suit.

*Id.* at 706–07 (third alteration and emphasis in original) (quot-
ing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S.
408, 414 n.8 (1984)).

## III

Having set forth the relevant legal background, we now
apply these principles to the case before us. Again, these re-
quirements are:

> First, the defendant's contacts with the forum
> state must show that it purposefully availed it-
> self of the privilege of conducting business in
> the forum state or purposefully directed its ac-
> tivities at the state. Second, the plaintiff's al-
> leged injury must have arisen out of the defend-
> ant's forum-related activities. And finally, any
> exercise of personal jurisdiction must comport
> with traditional notions of fair play and sub-
> stantial justice.

*Curry*, 949 F.3d at 398 (cleaned up) (quoting *Lexington Ins.*, 938 F.3d at 878). As a reminder, our focus is on the contacts that the defendant itself created with the forum state; the defendant cannot be "haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or a third person." *Burger King*, 471 U.S. at 475 (cleaned up).

## A. Purposeful Direction

First, we must analyze HANWJH's activity to determine whether it purposefully directed conduct at Illinois. HANWJH has no physical presence in Illinois. "Our cases make clear, however, that physical presence is not necessary for a defendant to have sufficient minimum contacts with a forum state." *Curry*, 949 F.3d at 398. As in *Curry*, we again find *Hemi* particularly instructive. Recall that in *Hemi*, a single agent of the plaintiff purchased over 300 packs of illegal cigarettes from the defendant cigarette retailer. 622 F.3d at 755. The sales to the plaintiff's agents supported a finding of personal jurisdiction because the retailer both maintained commercial websites from which one could order goods to Illinois and because it then "knowingly did do business with Illinois residents." *Id.* at 757–58; *see also Curry*, 949 F.3d at 399 (citing approvingly the same).

*Curry* and *Hemi* make clear that this case does not require us to break new ground. In *Curry*, the defendant's actions could be fairly "described as purposeful[ly]" directed where it "created an interactive website and explicitly provided that Illinois residents could purchase its products through that website," "arranged for the sale of its products through third-party websites," "sent written confirmation to the Illinois customers acknowledging their sale and including their Illinois

shipping address," and then, "shipped [the product] to its customers who were in Illinois." 949 F.3d at 399.

We see the same purposeful direction here. HANWJH's actions certainly can be characterized as purposeful. It established an online store, using a third-party retailer, Amazon.com. Through this online store, it unequivocally asserted a willingness to ship goods to Illinois and established the capacity to do so. When an order was placed, it filled the order, intentionally shipping an infringing product to the customer's designated Illinois address.

HANWJH nevertheless argues that NBA Properties has manufactured jurisdiction by having its agent purchase the infringing product. Such an assertion simply cannot be squared with *Hemi*. In making this argument, HANWJH overlooks that, in assessing purposeful direction, what matters is its structuring of its own activities so as to target the Illinois market. NBA Properties' motivations in purchasing the allegedly illegal item are in no way relevant to an assessment of whether HANWJH has established sufficient contacts to sell its products to Illinois residents.

HANWJH also urges a bright-line rule that a single transaction cannot be sufficient to establish jurisdiction. This argument is crucial to its case because the sole difference between this case and *Hemi* is volume. In *Hemi*, plaintiff's agent purchased over 300 packs of cigarettes; here we have a single order. Such a categorical rule would be unsound, and such a practice has been discouraged by the Supreme Court. *See Burger King*, 471 U.S. at 485–86; *see also Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158 (2d Cir. 2010) (holding that jurisdiction was proper over a defendant who offered handbags

for sale and sold a single allegedly infringing bag to the forum).

By drawing a rigid numerical line as HANWJH suggests, we would succumb to the trap that the Supreme Court has warned explicitly that we must avoid. "[T]alismanic jurisdictional formulas" are not an acceptable instrument in the toolbox of a court assessing personal jurisdiction. *Burger King*, 471 U.S. at 485. The question is not whether the plaintiff purchased enough goods to subject the defendant to personal jurisdiction. The focus is whether HANWJH purposefully directed its conduct at Illinois. *Cf. id.* at 485–86 ("'[T]he facts of each case must [always] be weighed' in determining whether personal jurisdiction would comport with 'fair play and substantial justice.'" (second alteration in original) (quoting *Kulko v. California Superior Ct.*, 436 U.S. 84, 92 (1978))).

*Matlin* hardly establishes a categorical rule that multiple online sales, as opposed to a single online sale, are required to establish a sufficient basis for personal jurisdiction. In *Matlin*, personal jurisdiction was improper because the sale was unrelated to the litigation and occurred after the case was filed. As we note below, in addition to being purposefully directed at the forum state, the relevant contacts must also be related to the litigation. It is true that *Matlin* found *Hemi* inapplicable to its situation in part because *Matlin* involved only a single sale. But the sale was not related to the underlying royalties dispute in the slightest. We explained that "this is not the type of case where the defendants sold and shipped a defective product into Illinois that injured residents there." *Matlin*, 921 F.3d at 707. We also explained that "even if we accepted that a single online sale provided a sufficient link to the royalty dispute, … the plaintiff-initiated contact arose after the

plaintiffs filed suit—solely to lure the defendants into Illinois to establish personal jurisdiction over them." *Id.* Here, unlike *Matlin*, we are faced with a situation where an infringing product was shipped to Illinois, in advance of the litigation, and the listing for sale and shipping of that product caused a likelihood of confusion for the people of Illinois. The defendants in *Matlin* could not have foreseen that they would be haled into court in Illinois until after the case was filed; HANWJH knew it could be subject to the jurisdiction of Illinois when it shipped a counterfeit product to the forum.

Finally, describing HANWJH's act of filling NBA Properties' order as the unilateral act of the plaintiff is a mischaracterization. Here, HANWJH shipped a product to the forum only after it had structured its sales activity in such a manner as to invite orders from Illinois and developed the capacity to fill them. It cannot now point to its "customers in Illinois and tell us, 'It was all their idea.'" *uBID, Inc.*, 623 F.3d at 428.

## B. Relatedness

"The proper exercise of specific jurisdiction also requires that the defendant's minimum contacts with the forum state be '*suit-related*.'" *Curry*, 949 F.3d at 400 (emphasis in original) (quoting *Advanced Tactical*, 751 F.3d at 801); *see also Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021) (explaining that the suit must "arise out of *or relate to* the defendant's contacts with the forum" (emphasis in original) (quoting *Bristol-Myers Squibb Co. v. Superior Ct. of California*, 137 S. Ct. 1773, 1780 (2017))). This requirement is met when direct sales from the defendant in the forum state involve the infringing product. *Curry*, 949 F.3d at 401–02.

HANWJH does not contend in its briefing that this litigation is unrelated to its activity in Illinois. This omission is well-advised. The Lanham Act provides that "[t]he holder of a registered mark ... has a civil action against anyone employing an imitation of it in commerce when 'such use is likely to cause confusion, or to cause mistake, or to deceive.'" *Sport-Fuel, Inc. v. PepsiCo, Inc.*, 932 F.3d 589, 595 (7th Cir. 2019) (quoting *KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004)); *see also* 15 U.S.C. § 1114(1)(a). "Additionally, the Act provides trademark-holders a cause of action against those who make a false designation of origin for a mark." *SportFuel, Inc.*, 932 F.3d at 595; *see also* 15 U.S.C. § 1125(a). NBA Properties need not show actual confusion to establish violations of these provisions, only likelihood of confusion. *Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990).

HANWJH's listing of its product on Amazon.com and its sale of the product to counsel are certainly related sufficiently to the harm of likelihood of confusion.[18] A vendor violates the

---

[18] We note that the Fifth Circuit has taken the opposite view, albeit in a nonprecedential disposition. *Getagadget, LLC v. Jet Creations Inc.*, No. 19-51019, 2022 WL 964204 (5th Cir. Mar. 30, 2022) (per curiam). In that case, the court declined to decide whether two sales to the plaintiff's counsel in the forum were sufficient to establish jurisdiction over the Lanham Act action. *Id.* at *4. Instead, the court determined that jurisdiction was improper because the litigation was not related to the sale. In its view, because the "'gravamen for any action of trademark infringement or common law unfair competition is whether the challenged mark is likely to cause confusion[,]' … Getagadget cannot reasonably argue that any consumer confusion arose out of Jet's selling and shipping the infringing product to Getagadget's counsel." *Id.* (emphasis removed) (quoting *Marathon Mfg. Co. v. Enerlite Prod. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985)).

We first note that the Supreme Court has rejected such a direct causal inquiry in the "arising out of or related to" analysis, and the latter part of this requirement permits us to look to whether the suit and contacts are related. *See Ford Motor Co.*, 141 S. Ct. at 1026–27. *Ford* expressly rejected the narrow contention that "the needed link [between the contacts and the litigation] must be causal in nature." *Id.* at 1026 (rejecting Ford's view that "[j]urisdiction attaches 'only if the defendant's forum conduct *gave rise* to the plaintiff's claims'" (emphasis in original)). Instead, due process requires only that the "'relationship among the defendant, the forum[s], and the litigation'—is close enough to support specific jurisdiction." *Id.* at 1032 (alteration in original) (quoting *Walden v. Fiore*, 571 U.S. 277, 284 (2014)). That is to say, we ensure that the conduct and the litigation are related. *See id.* at 1031. *Getagadget* does not come to grips with this aspect of *Ford*.

Second, we disagree with this interpretation of the Lanham Act. The Lanham Act requires the plaintiff to show "a likelihood of confusion," a question of fact in which "actual confusion" is but a single nondispositive part. *Bd. of Supervisors for Louisiana State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008); *see also Web Printing Controls Co. v. Oxy-Dry Corp.*, 906 F.2d 1202, 1204 (7th Cir. 1990) ("[T]he elements necessary to establish a *violation* of section 43(a) of the Lanham Act do not include any involving actual injury or actual confusion." (emphasis in original)). Moreover, there need not be an actual sale to demonstrate trademark infringement; merely listing for sale a product that is likely to cause confusion violates the Lanham Act. *See Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 204 (5th Cir. 1998) ("Infringement can be based upon confusion that creates initial consumer interest, even though no actual sale is finally completed as a result of the confusion." (quoting 3 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:6 (4th ed. 1997)); *see also* 4 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 23:12 (5th ed. 2022) ("[W]here allegedly infringing sales have been minimal to date, to require any proof of actual confusion would unfairly penalize the trademark owner for acting promptly to 'protect its trademark rights before serious damage has occurred.'" (quoting *Lois Sportswear, U.S.A., Inc. v. Levi Strauss & Co.*, 799 F.2d 867, 875 (2d Cir. 1986)))). With the understanding that the plaintiff need not make a showing of actual confusion to prove a violation of the Lanham Act, here, the

Lanham Act when it lists for sale infringing products. It does not matter that counsel for NBA Properties purchased the goods, as actual confusion is not necessary. The likelihood of confusion, the basis for the suit, is sufficiently related to HANWJH's act of selling the infringing product to Illinois, the basis for personal jurisdiction, that due process is not offended. *See Curry*, 949 F.3d at 401–02.

## C. Traditional Notions of Fair Play & Substantial Justice

We now examine whether subjecting HANWJH to jurisdiction in Illinois offends our traditional notions of fair play and substantial justice. Once purposeful minimum contacts are established, we look at other factors to determine whether asserting jurisdiction would comport with fair play and substantial justice. *Burger King*, 471 U.S. at 476. Thus, courts may evaluate:

> The burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of the underlying dispute, and the shared interest of the several States in furthering fundamental substantive social policies.

*Hemi*, 622 F.3d at 759 (cleaned up) (quoting *Purdue Rsch. Found.*, 338 F.3d at 781). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the

---

sale to NBA Properties' investigator is sufficiently related to the likelihood of confusion.

presence of some other considerations would render jurisdiction unreasonable." *Burger King*, 471 U.S. at 477.

HANWJH reminds us that it is a foreign party with only one documented sale to the forum state. It also notes that the NBA has its principal places of business "in New York, Georgia, and California," and argues that "Illinois' interest in utilizing its judicial resources to adjudicate [this] dispute[] between two out-of-state parties is weak."[19]

In *Curry*, we held that there was no unfairness in making a seller defend a suit in a state where it structured its business to "easily serve the state's consumers." 949 F.3d at 402. "There is no unfairness in requiring a defendant to defend a lawsuit in the courts of the state where, through the very activity giving rise to the suit, it continues to gain so much." *Id.* (cleaned up) (quoting *uBID, Inc.*, 623 F.3d at 433). NBA Properties may have its principal places of business elsewhere, but it nevertheless has an interest in ensuring that its trademark is protected against confusion in the Illinois market. Illinois no doubt has an interest in protecting its consumers from purchasing fraudulent merchandise. Finally, HANWJH alleges no unusual burden in defending the suit in Illinois.

## CONCLUSION

HANWJH availed itself of the Illinois market in offering and shipping a product to the forum. Because of this purposeful direction, and because these contacts are related to the suit, it is subject to jurisdiction in Illinois. We affirm the judgment of the district court.

---

[19] Appellant's Br. 7.

AFFIRMED